# ROBINSON v. BALTIMORE AND OHIO RAILROAD COMPANY.

## ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 167. Argued March 3, 4, 1915.—Decided April 5, 1915.

In a suit for personal injuries under the Employers' Liability Act, a contract between the plaintiff and a third party may be admissible in evidence on the trial to show that plaintiff was not defendant's employé even though a demurrer had been sustained to a special plea that the contract contained a release of liability.

A contract between the Pullman Company, as employer, and its employé releasing the employer, and also all railroad corporations over

whose lines the employer's cars were operated, from all claims for liability in personal injury sustained by the employé, *held* in this case valid unless the employé of the Pullman Company was also the employé of the railroad company, in which case that provision of the contract would be invalid under § 5 of the Employers' Liability Act.
Congress in legislating on the subject of carriers by rail was familiar with the situation and used the term employé in its natural sense and did not intend to include as employés of the carrier persons on interstate trains engaged in various services for other masters.
40 App. D. C. 169, affirmed.

THE facts, which involve the construction of the Federal Employers' Liability Act and its application to employés of others than the carrier, are stated in the opinion.

*Mr. Levi H. David,* with whom *Mr. Alexander Wold* was on the brief, for plaintiff in error:

Plaintiff was an employé of the railroad company either as a matter of law or of fact, and whether he was in the employ, jointly and severally, of the railroad company and the Pullman Company, he was entitled to have his case submitted to the jury under the Employers' Liability Act of 1908. *Pennsylvania Co.* v. *Roy,* 102 U. S. 451; *Williams* v. *Car Co.,* 40 La. Ann. 417; *Thorpe* v. *Railroad Co.,* 76 N. Y. 402; *Dwinelle* v. *Railroad,* 120 N. Y. 117; *Louisville R. R.* v. *Katzenberger,* 16 Lea, 380; *Railroad Co.* v. *Lillie,* 112 Tennessee, 341; *Railroad Co.* v. *Ray,* 101 Tennessee, 10; *Balt. &. Ohio So. W. Ry.* v. *Voigt,* 176 U. S. 498, 520; *O'Brien* v. *Chicago & N. W. Ry.,* 116 Fed. Rep. 502; *S. C.,* affirmed on new trial, 132 Fed. Rep. 593; *S. C.,* 153 Fed. Rep. 511.

The joint business relations between the Pullman Company and the Baltimore & Ohio Railroad Company, as disclosed by the written contract offered in evidence in this case, are closer than the relations existing between the express company and the railroad company shown to exist in the *Voigt Case.*

Plaintiff in error was an employé of both corporations.

The contract between the two companies creates a partnership. *Balt. & Ohio So. W. Ry.* v. *Voigt, supra; Oliver* v. *Nor. Pac. Ry.*, 196 Fed. Rep. 432; *Ward* v. *Thompson*, 22 How. 330.

Where there is any partnership arrangement between two masters (*e. g.*, two railroad companies), wherein a servant is employed for the common business of both, the servants of either master will become fellow-servants. McKinney on Fellow Serv., p. 46; *Railroad* v. *Schneider*, 45 Ohio St. 678; *Swainson* v. *Railroad*, L. R., 3 Exch. Div. 341.

Employment and payment of a person are not indispensable elements to create the relation of master and servant. *D. & R. G. R. R. Co.* v. *Gustafson*, 21 Colorado, 393; *Gaines* v. *Bard*, 57 Arkansas, 615.

Plaintiff in error became *pro hac vice* employé of the railroad company.

The general servant of one person may, for a time or on a particular occasion, become the servant of another by submitting himself, either expressly or impliedly, to the control and direction of the other. *Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Brooks* v. *Central Sainte Jeanne*, 228 U. S. 688; *Morgan* v. *Smith*, 159 Massachusetts, 571; *Hasty* v. *Sears*, 157 Massachusetts, 123; *Johnson* v. *Lindsay*, L. R. App. Cas. (1891), 371; *Rourke* v. *Colliery Co.*, L. R., 2 C. P. Div. 205; *McDowell* v. *Company*, 28 N. Y. Supp. 821; *Wyllie* v. *Palmer*, 137 N. Y. 248; *Kimball* v. *Cushman*, 103 Massachusetts, 194; *Brown* v. *Smith*, 86 Georgia, 274; *Clapp* v. *Kemp*, 102 Massachusetts, 481; *Murray* v. *Currie*, L. R., 6 C. P. Div. 24; *Railroad Co.* v. *Jones*, 12 S. W. Rep. (Tex.) 972; *Railroad* v. *Schneider*, 45 Ohio St. 678; *Westover* v. *Hoover* (Neb.), 129 N. W. Rep. 285; Thomp. on Neg. (2d ed.), § 3742; *M., K. & T. Ry.* v. *Reasor*, 28 Tex. Civ. App. 302; *Vary* v. *B. C. R. & M. R.*, 42 Iowa, 246; *Hannegan* v. *Union Warehouse Co.*, 38 N. Y. Supp. 272; *Mound*

*City Co.* v. *Conlon*, 92 Missouri, 229; *Atkyn* v. *Wabash Ry.*, 41 Fed. Rep. 193.

If the uncontradicted evidence of plaintiff did not show him to have been an employé of defendant, or the employé of both defendant and the Pullman Company, as a matter of law, the evidence was sufficient to be submitted to the jury. *Northwestern Packet Co.* v. *McCue*, 17 Wall. 508; *Mo., Kans. & Tex. Ry.* v. *West*, 232 U. S. 682; *Tenn. &c. R. R.* v. *Hayes*, 97 Alabama, 201; *Dwinelle* v. *N. Y. C. & H. R. R.*, 120 N. Y. 118; *Sacker* v. *Waddell*, 98 Maryland, 50.

Plaintiff in error was not a volunteer in the collection of railroad transportation from its passengers. *Brooks* v. *Central Sainte Jeanne*, 228 U. S. 688; *Pullman Car Co.* v. *Lee*, 49 Ill. App. 77.

The alleged release was no bar. *Standard Oil Co.* v. *Anderson*, 212 U. S. 221; *Voigt Case, supra; O'Brien* v. *Chicago &c. Ry.*, 116 Fed. Rep. 502.

Negligence of the defendant was shown. *Nor. Pac. Ry.* v. *Mix*, 121 Fed. Rep. 476; *Hayes* v. *Michigan Central R. R.*, 111 U. S. 241; *Great Northern Ry.* v. *Sloan*, 196 Fed. Rep. 275; *Pennsylvania R. R.* v. *Goughnour*, 208 Fed. Rep. 961.

The evidence of the defendant's negligence should have been submitted to the jury. *Tex. & Pac. Ry.* v. *Gentry*, 163 U. S. 353; *Chic. & N. W. Ry.* v. *O'Brien*, 82 C. C. A. 461; *Hough* v. *Texas & Pac. Ry.*, 100 U. S. 213; *Nor. & West. Ry.* v. *Earnest*, 229 U. S. 114; *Grand Trunk Ry.* v. *Lindsay*, 233 U. S. 42.

The Pullman car is not a vehicle of a common carrier independent of the railroad company. *Robinson* v. *Southern Ry.*, 40 App. D. C. 549; *Pickard* v. *Pullman Car Co.*, 117 U. S. 34.

The status of sleeping-car companies operated in connection with railway trains is not that of a carrier of goods or passengers, *Lemon* v. *Pullman Car Co.*, 52 Fed. Rep. 262;

*Meyer* v. *St. Louis &c. Ry.*, 54 Fed. Rep. 116; nor is it that of an innkeeper. *Blum* v. *Pullman Car Co.*, 1 Flipp. (U. S.) 500; *Pullman Car Co.* v. *Lawrence*, 74 Mississippi, 782; *Nevin* v. *Pullman Car Co.*, 106 Illinois, 222; Hutchinson on Carriers (ed. 1906), §§ 1130, 1136; *Pullman Car Co.* v. *Taylor*, 65 Indiana, 153; *Pullman Car Co.* v. *Pollock*, 69 Texas, 123; *Louis. & Nash. R. R.* v. *Katzenberger*, 16 Lea (Tenn.), 380; *Dwinelle* v. *N. Y. C. & H. R. R.*, 120 N. Y. 117; *P., C. & S. L. Ry.* v. *Krouse*, 30 Oh. St. 224.

*Mr. John W. Yerkes*, with whom *Mr. George E. Hamilton* and *Mr. John J. Hamilton* were on the brief, for defendant in error:

The plaintiff was not an employé of the defendant railroad, and therefore not a beneficiary of any of the provisions of the Employers' Liability Act.

The cases cited in brief for plaintiff, to the effect that plaintiff was an employé of the defendant railroad, do not sustain that contention.

Plaintiff was not an employé of both companies.

The trial court did not err in admitting in evidence contract between plaintiff and Pullman Company.

Defendant's negligence in connection with the accident was not shown.

In support of these contentions see *Balt. & Ohio R. R.* v. *Voigt*, 176 U. S. 498; *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 36; *Brown* v. *Railroad Co.*, 6 App. D. C. 242; *Chicago &c. R. R.* v. *Hamler*, 215 Illinois, 525; *Davis* v. *Ches. & Ohio Ry.*, 5 L. R. A. (N. S.) 458; *Denver &c. R. R.* v. *Whan*, 11 L. R. A. (N. S.) 432; *Hughson* v. *Richmond & Danville R. R.*, 2 App. D. C. 98; *Jones* v. *St. Louis &c. Ry.*, 125 Missouri, 666; *McCloskey* v. *Cromwell*, 11 N. Y. 593; *McDermon* v. *Southern Pacific Co.*, 122 Fed. Rep. 669; *Missouri &c. R. R.* v. *Blalack*, 105 Texas, 297; *Missouri &c. R. R.* v. *West*, 134 Pac. Rep. 655; *North Car. R. R.* v. *Zachary*, 232 U. S. 256; *O'Brien* v. *Chicago &c. Ry.*, 116

Fed. Rep. 502; *S. C.*, 132 Fed. Rep. 593; *S. C.*, 153 Fed. Rep. 511; *Oliver* v. *Nor. Pac. R. R.*, 196 Fed. Rep. 432; *Patton* v. *Fox*, 179 Missouri, 533; *Penna. Co.* v. *Roy*, 102 U. S. 451; *M., K. & T. R. R. Co.* v. *West*, 232 U. S. 682; *Santa Fe &c. Ry.* v. *Grant*, 228 U. S. 177; *Schafer* v. *Stonebraker*, 4 Gill & Johnson (Md.), 355; *Shaw* v. *Railroad Co.*, 101 U. S. 565; *Standard Oil Co.* v. *Anderson*, 212 U. S. 221; *Philadelphia Co.* v. *Stimpson*, 14 Pet. 448; *Tietz* v. *Tietz*, 90 Wisconsin, 66.

See also Employers' Liability Act of 1908, 35 Stats. 65, 149; Iowa Employers' Act, Iowa Code, §§ 2071, 2074; Missouri Fellow-Servants' Law, § 2876, Rev. Stat. of Missouri, 1899.

MR. JUSTICE HUGHES delivered the opinion of the court.

George R. Robinson, the plaintiff in error, brought this action to recover damages for personal injuries sustained by him while performing his duty as a porter in charge of a Pullman car which was being hauled by the defendant as a part of an interstate train. The injuries were received in a collision which was due, it was alleged, to the defendant's negligence. The defendant introduced in evidence the plaintiff's contract of employment [1] with the Pullman

---

[1] The material portions of the contract are as follows:

"Be it known, That I, the undersigned, hereby accept employment by, and enter into, or continue from this date, in the service of, The Pullman Company upon the following express terms, conditions and agreements, which in consideration of such employment and the wages thereof I do hereby make with said The Pullman Company, to wit:

"First. So long as I shall remain in said employment and service, I will fully comply with all regulations, rules and orders of said Company or its agents, issued for the government of its employés, go wherever I may be required in said service, and well, faithfully and honestly perform all duties assigned to me.

"Second. My wages shall at all times be calculated and paid at the monthly rate per day for the number of days I shall have been actually

Company, by which he released all railroad corporations over whose lines the cars of that company might be operated while he was traveling in its service. 'from all claims for liability of any nature or character whatsoever on account of any personal injury or death.' The trial court directed a verdict in favor of the defendant and the judg-

employed, and I may quit or resign, or may be suspended or discharged from such employment and service, at any time, or at any place, without previous notice. . . .

"Fourth. I assume all risks of accidents or casualties by railway travel or otherwise, incident to such employment and service, and hereby, for myself, my heirs, executors, administrators or legal representatives, forever release, acquit and discharge The Pullman Company, and its officers and employés, from any and all claims for liability of any nature or character whatsoever, on account of any personal injury or death to me in such employment or service.

"Fifth. I am aware that said The Pullman Company secures the operation of its cars upon lines of railroad, and hence my opportunity for employment, by means of contracts, wherein said The Pullman Company agrees to indemnify the corporations or persons owning or controlling such lines of railroad against liability on their part to the employés of said The Pullman Company in cases provided for in such contracts, and I do hereby ratify all such contracts made or to be made by said The Pullman Company and do agree to protect, indemnify and hold harmless said The Pullman Company with respect to any and all sums of money it may be compelled to pay, or liability it may be subject to, under any such contract, in consequence of any injury or death happening to me, and this agreement may be assigned to any such corporation or person and used in its defense.

"Sixth. I will obey all rules and regulations made or to be made for the government of their own employés by the corporations or persons over whose lines of railroad the cars of said The Pullman Company may be operated while I am traveling over said lines in the employment or service of said The Pullman Company; and I expressly declare that while so traveling I shall not have the rights of a passenger with respect to such corporations or persons, which rights I do expressly renounce; and I hereby, for myself, my heirs, executors, administrators or legal representatives, forever release, acquit and discharge any and all such corporations and persons from all claims for liability of any nature or character whatsoever on account of any personal injury or death to me while in said employment or service."

ment, entered accordingly, was affirmed by the Court of Appeals. 40 App. D. C. 169.

The plaintiff in error complains of the admission of the contract in evidence, in view of the fact that a demurrer to a special plea setting up the release had been sustained; but, if the contract was a defense, it cannot be said that the court erred in giving effect to it, despite the earlier ruling. The evidence was admissible under the plea of not guilty. *Brown* v. *Balt. & Ohio R. R.*, 6 App. D. C. 237, 242; *Shafer* v. *Stonebraker*, 4 Gill & J. (Md.) 345, 355, 356; *Johnson* v. *Philadelphia &c. R. R.*, 163 Pa. St. 127, 133. It is also clear that, unless condemned by statute, the contract was a valid one and a bar to recovery. *Balt. & Ohio &c. Rwy.* v. *Voigt*, 176 U. S. 498; *Sante Fe &c. Rwy.* v. *Grant Co.*, 228 U. S. 177.

The substantial question is whether the contract of release was invalid under § 5 of the Employers' Liability Act, of April 22, 1908, c. 149, 35 Stat. 65, which provides that 'any contract . . . the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void.' The application of this provision depends upon the plaintiff's employment. For the 'liability created' by the Act is a liability to the 'employés' of the carrier, and not to others; and the plaintiff was not entitled to the benefit of the provision unless he was 'employed' by the Railroad Company within the meaning of the Act. It will be observed that the question is not whether the Railroad Company, by virtue of its duty to passengers of which it cannot divest itself by any arrangement with a sleeping car company, would not be liable for the negligence of a sleeping car porter in matters involving the passenger's safety (*Pennsylvania Co.* v. *Roy*, 102 U. S. 451). Nor are we here concerned with the measure of the obligation of the Railroad Company, in the absence of special contract, to one in the plaintiff's situation by

reason of the fact that he was lawfully on the train, although not a passenger. The inquiry rather is whether the plaintiff comes within the statutory description, that is, whether upon the facts disclosed in the record it can be said that within the sense of the Act the plaintiff was an employé of the Railroad Company, or whether he is not to be regarded as outside that description being, in truth, on the train simply in the character of a servant of another master by whom he was hired, directed and paid, and at whose will he was to be continued in service or discharged.

The contract between the Pullman Company and the Railroad Company was introduced in evidence. Without attempting to state its details, it is sufficient to say that the case was not one of co-proprietorship (see *Oliver* v. *Northern Pacific R. R.*, 196 Fed. Rep. 432, 435). It appeared that there was supplied by the Pullman Company on its own cars a distinct and separate service which was performed by its own employés under its own management. For this service the Pullman Company charged its customary rates. It was provided that the Railroad Company should not receive compensation from the Pullman Company for the movement of cars furnished under the contract nor should the Pullman Company be paid for their use. But whenever the gross revenue from sales of seats and berths in the Pullman cars exceeded an average of $7,750 per car per annum the Pullman Company was to pay to the Railroad Company one-half of the excess; and if the average gross revenue from the Pullman cars (from causes beyond the control of the Pullman Company) was less than $6,000 per car per annum for two consecutive years that company was entitled to terminate the agreement upon twelve months' notice, with the option, however, on the part of the Railroad Company, to pay to the Pullman Company such sum as would bring the gross revenue up to the specified amount or to purchase the cars at a price to be determined. We think it to be

clear that in employing its servants the Pullman Company did not act as the agent of the Railroad Company. The service provided by the Pullman Company was, it is true, subject to the exigencies of railroad transportation, and the Railroad Company had the control essential to the performance of its functions as a common carrier. To this end the employés of the Pullman Company were bound by the rules and regulations of the Railroad Company. This authority of the latter was commensurate with its duty, and existed only that it might perform its paramount obligation.

With this limitation, the Pullman Company supplied its own facilities and for this purpose organized and controlled its own service, including the service of porters; it selected its servants, defined their duties, fixed and paid their wages, directed and supervised the performance of their tasks, and placed and removed them at its pleasure. See *Hughson* v. *Richmond & Danville R. R.*, 2 App. D. C. 98; *McDermon* v. *Southern Pacific Co.*, 122 Fed. Rep. 669; *Jones* v. *St. Louis &c. Rwy.*, 125 Missouri, 666; *Chicago &c. R. R.* v. *Hamler*, 215 Illinois, 525. It is said that the plaintiff had been promoted to be a 'porter in charge' of the Pullman car between Washington and Wheeling, with increased compensation, but he still was the porter of the Pullman Company, employed in its work. It is insisted that he should be regarded as the employé of the Railroad Company because of the fact that in the case of passengers coming on the train after three o'clock in the morning, he received the railroad ticket or fare which he placed in an envelope and gave to the train conductor 'when he came back'; the railroad ticket was punched or canceled by the conductor. This, however, was an obvious accommodation to the passenger in the Pullman car, and in any event it was merely an incidental matter which cannot be deemed to qualify the character of plaintiff's employment as it is to be viewed from the standpoint of the statute.

We are of the opinion that Congress used the words 'employé' and 'employed' in the statute in their natural sense, and intended to describe the conventional relation of employer and employé. It was well known that there were on interstate trains persons engaged in various services for other masters. Congress, familiar with this situation, did not use any appropriate expression which could be taken to indicate a purpose to include such persons among those to whom the railroad company was to be liable under the Act.

We conclude that the plaintiff in error was not an employé of the defendant company within the meaning of the Employers' Liability Act, and that the judgment must be affirmed.

*Judgment affirmed.*