## REEDER v. NORTHERN PAC. RY. CO.

· (District Court, D. Oregon. October 9, 1922.)

No. L–8951.

**Railroads ⊜⇒469—Contract with lessee of warehouse for exemption from liability for fire not binding on storers.**

    The fact that a railway company's lease of its warehouse to warehousemen exempted the company from liability for negligent fire, and that the warehousemen's receipts, issued under Or. L. §§ 6133, 7995, 8009, 8010, and 8028, to storers of grain, waived all right of subrogation or recovery for loss or damage by fire injury, or otherwise, either against the warehousemen or the railway company, did not relieve the railway company from liability to such storers for negligent fire; the receipts not evidencing express or implied ratification of the contract of leasing, and containing no waiver of liability on the part of either the lessor or lessees for negligence of either.

At Law. Action by O. H. Reeder against the Northern Pacific Railway Company. On demurrer to answer. Demurrer sustained.

S. A. Lowell, of Pendleton, Or., and Reeder & Eastham, of Portland, Or., for plaintiff.

Geo. T. Reid, of Seattle, Wash., Carey & Kerr, of Portland, Or., John H. Pedigo, of Walla Walla, Wash., C. H. Winders, of Seattle, Wash., and Charles A. Hart, of Portland, Or., for defendant.

WOLVERTON, District Judge. This is an action to recover damages, which it is alleged accrued by reason of the negligence of the defendant, its servants and employees, in allowing and permitting fire to escape and spread, whereby plaintiff's property, consisting of wheat stored in the warehouses of the Independent Warehouse Company and the Pacific Coast Elevator Company, situated at Myrick, Umatilla county, Or., was burned and destroyed. The warehouses were located on property owned by the defendant and on its side track at Myrick. Prior to the fire, the railroad company entered into contracts of leasing with the warehouse companies, which contained, among other terms and provisions, the following:

"It is understood by the parties that the leased premises are in dangerous proximity to the tracks of the railway company, and that persons and property on the leased premises will be in danger of injury or destruction by fire or other causes incident to the operation of a railway, 'and the lessee accepts this lease subject to such dangers. It is therefore agreed, as one of the material considerations of this lease, without which the same would not be granted, that the lessee assumes all risk of personal injury to the lessee and to the officers, servants, employees or customers of the lessee while on said premises and all risk of loss, damage, or destruction to buildings or contents or to any other property brought upon or in proximity to the leased premises by the lessee, or by any other persons with the consent or knowledge of the lessee, without regard to whether such loss be occasioned by fire or sparks from locomotive engines or other causes incident to or arising from the movement of locomotives, trains, or cars, misplaced switches or in any respect from the operation of a railway or to whether such loss or damage be the result of negligence or misconduct of any person in the employ or service of

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the railway company, or of defective appliances, engines, or machinery. And the lessee shall save and hold harmless the railway company from all such damage, claims, and losses."

These contracts were in force and effect when the wheat was received on storage, and until and after the same was destroyed. For a further and separate answer, the defendant alleges in effect that, by reason of these contracts, it was provided in the receipts under which the warehouse companies received the wheat that all rights of subrogation or recovery for loss or damage by fire, either as against the Independent Warehouse Company or Pacific Coast Elevator Company or this defendant, were specifically waived. It is then further alleged that plaintiff and his assignors had been for a long period of time doing business with the warehouse companies, and were familiar with the conditions under which the wheat was stored and the conditions of the warehouse receipts issued, and delivered the wheat to such companies with the understanding and agreement that the same should be held under the terms of such receipts, and that in so storing and depositing the wheat in such warehouses they waived all claims, as against both the warehouse companies and the defendant, by reason of loss thereof by fire; wherefore it is maintained that plaintiff is estopped to assert any claim against defendant on account of the fire referred to. The sufficiency of this answer is challenged by demurrer.

The question is presented whether the storers are to be bound by the contracts or agreements entered into and obtaining between the railroad company and the warehouse companies. The storers are not in any way privy to such contracts, and can be bound by them only, if at all, by reason of their contractual relations with the warehouse companies through the warehouse receipts, which they received and accepted from such companies, and the purpose in view when they accepted them, whether it was to adopt the contracts between the railroad company and the warehouse companies as binding upon them, and as controlling, along with the provisions of the warehouse receipts.

It is not disputed that the contracts between the railroad company and the warehouse companies are valid and binding obligations, although they provide against loss and damage as a result of the negligence of any person in the employ of the railroad company. The proposition is predicated upon the settled right of the railroad company to make any contract it sees fit which does not concern its duties and obligations as a carrier of persons and chattels. Santa Fé Railway v. Grant Bros., 228 U. S. 177, 33 Sup. Ct. 474, 57 L. Ed. 787. The doctrine espoused by the case here cited is that common carriers cannot secure immunity from liability for their negligence by any sort of stipulation, but that the rule is without application when a railway company is acting outside of the performance of its duty as a common carrier. The case was one where the railway company was operating under contract with a construction company for building an extension of its road. It was determined that the contract was for services on the part of the railway company outside of its duty as a common carrier, and the contract was enforced, although it provided against loss or damage to personalty arising through the negligence of its servants and employees.

It may be conceded that, if the railroad company and the storers in these warehouses had entered into a like contract for immunity from liability on account of loss by fire, although through the negligence of the railroad company's servants and employees, the contract would have been legitimate and obligatory, the railroad company not being engaged in the warehouse business, and the contract not being for the performance of any duty in that relation. A form of warehouse receipt has been produced in argument, which counsel agree is the one used, and, as it states the provisions involved concretely, I quote it as follows:

"All right of subrogation or recovery for loss or damage by fire, injury, or otherwise, either against the Pacific Coast Elevator Company or the railway company upon whose land the building containing this grain is located, is by the acceptance of this receipt specifically waived by the owner or holders hereof."

Counsel for defendant maintain the affirmative of the proposition that the storers are bound by the contractual relations existing between the warehouse company and the railway company and rely upon several authorities which it is claimed in their facts are so analogous to those of the instant case as to dominate the conclusion to be reached. Let us notice such of these cases as are essential to refer to.

Baltimore & Ohio, etc., Railway v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, was an action in which Voigt sought to recover damages against the company for personal injuries sustained in a collision of its trains which occurred through the alleged neglect of servants and employees of the company. Voigt was at the time a messenger of the United States Express Company, which was operating on the trains of the railway company under a contract with it whereby the express company stipulated to protect and hold harmless the railway company from all liability it might be under to employees of the express company for any injuries sustained by them while being transported by the railway company, whether such injuries were caused by negligence of the railway company or otherwise. Voigt entered into a like contract with the express company, whereby he agreed to indemnify and hold harmless the express company from any and all claims that might be made against it arising out of any claim for recovery on his part for any damages sustained by him by reason of any injury, whether such damages resulted from negligence or otherwise, and expressly ratified the agreement existing between the express company and the railway company. Voigt was not permitted to recover.

Robinson v. Baltimore & Ohio R. R., 237 U. S. 84, 35 Sup. Ct. 491, 59 L. Ed. 849, is a case where Robinson sued to recover damages for injuries sustained while engaged as a porter in charge of a Pullman car which was being hauled by the railroad company as part of an interstate train. Like contracts existed between the Pullman Company and the railroad company, and between Robinson and the Pullman Company, as existed in the Voigt Case, and the result of the decision of the court was the same.

Wells Fargo & Co. v. Taylor, 254 U. S. 175, 41 Sup. Ct. 93, 65 L. Ed. 205, is a like case, where the express company was operating over

a railroad under an agreement by which it assumed all risks to its employees while engaged in its business on the trains of the railroad company, and agreed to indemnify that company against such claims. Taylor, as its messenger, as a condition to his employment, assented to the understanding had with the railroad company, and agreed to assume all risk of injury incident to his employment from whatever cause arising, and it was held that his contract was valid, and bound him not to assert a liability against the railroad company for personal injuries sustained through negligence of that company while engaged in his duties as such express messenger.

Fowler v. Pennsylvania R. Co., 229 Fed. 373, 143 C. C. A. 493, presents a case on the facts in all respects like the Robinson Case. The same result ensued.

In order to ascertain the explicit grounds upon which these cases were decided, we have but to study the Voigt Case. Certain cases are cited in the opinion of the court, which were relied upon by counsel to assimilate Voigt's position to that of postal clerks, who were uniformly held to be entitled to the rights of ordinary passengers. But the court distinguishes these cases, on the ground that there were no stipulations by the government with the railroad companies of like tenor as appear in the Voigt Case, assented to by the postal clerks. The court then further alludes to several cases holding the railroad company liable, but each of them is distinguished on the ground that, although the railroad company had contracted with the express company for immunity from liability, the messengers and agents of such companies had not assented thereto. So it appears that the express assent of Voigt to the stipulations of the express company, in whose employ he was at the time, with the railroad company, and his ratification of such stipulations, constituted a controlling factor in the determination of the cause.

The principles involved and decided are, in effect, that the railroad company, in dealing with the express company, did not engage to discharge any duty pertaining to that of a common carrier, and therefore was entitled to enter into a contract with the express company for immunity from liability to the messenger, although negligence on the part of the servants and employees of the railroad company was involved; that the messenger was not a passenger for hire; and that, having voluntarily assented to and ratified the contract between the express company and the railroad company, he thus exonerated the railroad company from liability for personal injuries sustained, although attributable to the negligence of the company.

The analogy between these cases and the instant case is not apparent. Here there is no express assent to or ratification by the storers of the contracts of the warehousemen with the railway company. It does not appear from the answer that the storers had any knowledge whatever of such contracts, or that they stored their grain with such knowledge. All that appears is, what the receipts disclose, namely, that the storers waive all right of subrogation or recovery for loss or damage by fire, injury, or otherwise, either as against the warehouse company or against the railway company. The storers were dealing with quasi public utilities, and had a right to demand storage on the conditions pre-

scribed by statute (sections 6133, 7995, 8009, 8010, and 8028, Olson's Oregon Laws), and they cannot be presumed to have been aware that they were to be subjected to additional conditions in the event of storage. Unless it is made to appear that they had specific and definite knowledge of the contracts between the warehouse companies and the railway company and thereupon deliberately waived liability on the part of the railway company they ought not to be held to be bound by such contracts simply because of the acceptance of the receipts issued to them.

Another feature attending the receipts is that they conceal or rather disguise the contracts between the warehouse companies and the railway company in that they make no allusion to damages arising from negligence of the railway company. It is conceded by counsel to be the law, as announced in Pilson v. Tip-Top Auto Co., 67 Or. 528, 136 Pac. 642, that a bailee for hire cannot by contract relieve himself from liability to the bailor, arising from the negligence of himself, his agents or servants. These receipts, if construed to relieve the warehouse companies from loss or liability arising from their own negligence, would be void and unenforceable. If otherwise construed, they would be unobjectionable. Of two constructions, where there is ambiguity, the one giving validity to the instrument is to be preferred. Thus construed, the receipts contain no waiver of liability on the part of either the warehouse companies or the railway company for damages, by fire or otherwise, arising from the negligence of either.

In view of these considerations, the demurrer will be sustained.