JULIA C. MILLER, Administratrix of the estate of ERNEST F. MILLER, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.—163 S. W. (2d) 1034.

Division One, July 1, 1942.

Rehearing Denied, July 28, 1942.

*Carlton S. Hadley, Walter N. Davis* and *Arnot L. Sheppard* for appellant.

*Mark D. Eagleton, James A. Waechter* and *Roberts P. Elam* for respondent.

948

BRADLEY, C.—This cause is under the Federal Employers' Liability Act, 45 U. S. C. A., sec. 51 et seq. The verdict was for $55,000 in favor of plaintiff. A *remittitur* of $25,000 was made; the motion for a new trial was overruled, and defendant appealed.

Ernest F. Miller was in the employ of defendant as switchman and while on duty was struck and killed July 12, 1940, in defendant's yards in East St. Louis, Illinois. Plaintiff, his widow, brought this suit as administratrix of his estate, to recover damages for the alleged wrongful death.

If plaintiff has a cause of action against defendant, it is conceded that the cause is properly under the Federal Employers' Liability Act. Plaintiff relied on the *res ipsa loquitur* rule and submitted the cause on such theory.

The train on which deceased was killed was a freight train and moved from St. Louis, Missouri, to East St. Louis, Illinois, across Eads Bridge, owned by defendant. There are two tracks across the bridge, and, contrary to the general practice, eastbound trains generally use the north track, and westbound trains generally use the south track, but to accommodate traffic, such use may be reversed. And when such occurs, the use is termed *irregular*. Deceased's train, on the run resulting in his death, ran irregular over the bridge, that is, ran east on the south track. A train moving east over the bridge enters a tunnel at 9th and Poplar streets, St. Louis, and emerges from the tunnel at Washington avenue. At the entrance to the tunnel defendant has what is called the X-office, and at Washington avenue, the MS-office. At the east end of the bridge is J-office, and near Relay Depot in East St. Louis is Q-tower office. Defendant's train dispatcher is at X-office and other employees of defendant ▮▮▮▮ are in charge of the other offices mentioned. J-office was not open at time Miller was struck and killed.

When a train is to cross the bridge from St. Louis, the rear switchman, at the place where the train is made up, is given, by the yard master, a small leather paddle, called a *staff,* with a number on it. Also, a train crossing the bridge from St. Louis must have a red light at the rear. The staff is thrown off by the rear switchman as the rear of the train passes Washington avenue station, the MS-office, and if defendant's employee there gets the staff and sees the red light

on the rear, then he notifies the man in charge at X-office, the entrance to the tunnel. Until the employee at X-office receives the information that the employee at the MS-office has the staff and that the red light was on the rear of the eastbound train, no other train on that track is permitted to enter the tunnel.

In East St. Louis, and on the east approach to the bridge, deceased's train stopped because a signal was set against it at Q-tower. At that time deceased was standing on the drawbar of the rear car of his train. In a few minutes after deceased's train passed the MS-office at Washington avenue, a Mobile & Ohio gas electric passenger train, eastbound, entered the tunnel at X-office on the south track, and while deceased's train was standing on the track, and deceased standing on the drawbar, the M. & O. train, about 9 A. M., while moving about 10 or 15 miles per hour, ran into the rear of deceased's train and killed him.

The evidence was to the effect that the engineer of the M. & O. train had an unobstructed view of the train ahead for at least 558 feet and could have stopped his train within 90 or 100 feet. There is no claim that deceased was in any manner at fault. Other facts will be stated in the course of the opinion.

Defendant contends that its instruction in the nature of a demurrer to the evidence, at the close of the case, should have been given because, it is claimed, recovery could not, under the facts, be lawfully had under the Federal Employers' Liability Act, and because the *res ipsa* rule was not, under the facts, applicable. Also, it is contended that the judgment for $30,000 is excessive.

 Sec. 51, 45 U. S. C. A., provides that every common carrier by railroad, while engaging in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee . . . for such injury or death *resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier*" (italics ours). Defendant contends that there is no substantial evidence to show that Miller's death was caused "in whole or in part" by the negligence of any *employee* of defendant, and that therefore, there can be no recovery under the Federal Employers' Liability Act.

In the brief defendant says: "Both decedent and appellant at the time of the collision were engaged in interstate transportation. As a consequence the rights of both respondent and appellant must be determined by the Federal Employers' Liability Act, under the terms of which there can be no recovery unless the relation of employee and employer exists between the injured person and the defendant, respectively, and the latter's negligence is shown to be the proximate cause of the former's injury."

Plaintiff pleaded the Illinois law as declared in Armstrong v. Chicago & Western Ind. R. Co., 350 Ill. 426, 183 N. E. 478, to the effect that where the owner of a railroad permits another railroad to use its tracks and an injury results from negligent operation by such other, while engaged in interstate transportation, the owner and user are jointly and severally liable under the Federal Employers' Liability Act. It was admitted that the railroad track over which the M. & O. train ran and was running when it struck and killed deceased was owned by and was under the control of defendant, and it was admitted that the M. & O. paid defendant for the use of its track "on the same basis that is paid by any other railroad company or operator of a railroad who uses the track in the same way," and it was admitted that the use of defendant's railroad by the M. & O. "was with the knowledge and consent of the defendant." Also, it was admitted that defendant "owned and controlled all the switches and signals and appliances used in connection with their tracks . . . (and) all of the devices in connection with the operation of the track itself."

The Illinois Supreme Court, in the Armstrong case, relied on North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, for the holding that, under the facts there, both railroad companies, the owner and the user, were liable under the Federal Employers' Liability Act, and in the brief in the present case, able counsel for defendant say that the Zachary case "seems to support the rule announced in the Armstrong case," but counsel say that "later decisions of the Supreme Court of the United States have broken away from the Zachary holding."

To support the contention that, under the facts, recovery cannot be had under the Federal Employers' Liability Act, defendant relies on Robinson v. Baltimore & Ohio R. Co., 237 U. .S. 84, 35 Sup. Ct. 491, 59 L. Ed. 849; Chicago & Alton R. Co. v. Wagner, 239 U. S. 452, 136 Sup. Ct. 135, 60 L. Ed. 379; Hull, Admx., v. Philadelphia & Reading Ry. Co., 252 U. S. 475, 40 Sup. Ct. 358, 64 L. Ed. 670.

Before taking up these cases we consider North Carolina R. Co. v. Zachary, supra. From that case, it appears that a locomotive fireman, while in the employ of the Southern Railway Company, lessee of the Baltimore & Ohio, was killed while on duty in the B. & O. switch yards. In ruling that the cause was one under the Federal Employers' Liability Act, the court said [232 U. S. 1. c. 254]:

"Under the local law (of North Carolina) as laid down in Logan v. Railroad, 116 N. Car. 940, the lessor is responsible for all acts of negligence of its lessee occurring in the conduct of business upon the lessor's road; and this upon the ground that a railroad corporation cannot evade its public duty and responsibility by leasing its road to another corporation, in the absence of a statute expressly

exempting it. The responsibility is held to extend to employes of the lessee, injured through the negligence of the latter.''

In Robinson v. Baltimore & Ohio, supra, the plaintiff was a Pullman porter and as such, was ''in charge of a Pullman car which was being hauled by the defendant as a part of an interstate train.'' He was injured in a collision alleged to have been caused by the negligence of the defendant. The defendant introduced in evidence plaintiff's contract of employment by the Pullman Company. By such contract, the plaintiff ''released all railroad corporations over whose lines the cars of that company might be operated while he was traveling in its service 'from all claims for liability of any nature or character whatsoever on account of any personal injury or death.' '' It was held that the Pullman porter was not an employee of the railroad company within the meaning of the term *employee* in the Federal Employers' Liability Act. The court said [237 U. S. 1. c. 94] :

''We are of the opinion that Congress used the ̇words 'employe' and 'employed' in the statute in their natural sense, and intended to describe thė conventional relation of employer and employe. It was well known that there were on interstate trains persons engaged in various services for other masters. Congress, familiar ̇with this situation, did not use any appropriate expression which could be taken to indicate a purpose to include such persons among those to whom the railroad company was to be liable under the act. We conclude that the plaintiff in error was not an employe of the defendant company within the meaning of the Employers' Liability Act.''

In Chicago & Alton R. Co. v. Wagner, supra, it appears that Wagner was a conductor and in charge of a switching crew of the Burlington Railroad, and with his train, was moving, in Chicago, over the track of the Chicago & Alton, which track was being used by ̇the Burlington ''under an arrangement with the Alton Company.'' He was injured by striking a semaphore post which was alleged to have been ''in dangerous proximity to the track.'' The cause involved the validity of a release. It was not brought nor tried under the Federal Employers' Liability Act. However, the court said this [239 U. S. 1. c. 456] :

''There were allegations in the original declaration to the effect that Wagner, at the time of the injury, was engaged in interstate commerce as an employe of the Burlington Company, but it seems to have been agreed upon the trial that the action was not governed by the Federal statute; and this indeed was manifest, as the Burlington Company was not a party to the action and the Alton Company was not the plaintiff's employer. [Robinson v. Baltimore & Ohio R. Co., 237 U. S. 84, 91.] It was tried as a common law action on thė case.''

Hull, Admx., v. Philadelphia & Reading Ry. Co., supra, was under the Federal Employers' Liability Act. ▮▮▮▮ It appears that John M. Hull was in the employ of the Western Maryland Railway Com-

954

pany, an interstate carrier which operated a line from Hagerstown, Maryland, to Lurgan, Pennsylvania, at which point it connected with defendant whose road extended from Lurgan to Rutherford, Pennsylvania. Through freight trains were operated by the Western Maryland Company from Hagerstown, Maryland, to Rutherford, Pennsylvania. Hull was killed while his train was being operated over defendant's line. There was an operating agreement between the two companies. It was held that Hull was not an employee of the Philadelphia & Reading Company within the meaning of employee in the Federal act, and that the operating agreement did not make him such. The court said [252 U. S. l. c. 480]:

"It is clear that each company retained control of its own train crews; that what the latter did upon the line of the other road was done as a part of their duty to the general employer; and that, so far as they were subject while upon the tracks of the other company to its rules, regulations, discipline, and orders, this was for the purpose of coordinating their movements to the other operations of the owning company, securing the safety of all concerned, and furthering the general object of the agreement between the companies. [See Standard Oil Co. v. Anderson, 212 U. S. 215, 226.] North Carolina R. Co. v. Zachary, 232 U. S. 248, is cited, but is not in point, since in that case the relation of the parties was controlled by a dominant rule of local law, to which the agreement here operative has no analogy."

It is quite clear, we think, that if there is a local law such as existed in the Zachary case, supra, and as exists in the present case, then an employee, injured or killed under such facts, as here, an action for such injury or death is properly under the Federal Employers' Liability Act. In the present case, the trial court instructed the jury "that under the law of this case the agents and servants of the receivers of the Mobile & Ohio Railroad Company, in charge of the passenger train mentioned in evidence, are to be regarded by you as the agents and servants of the defendant." In view of the local law obtaining in Illinois, we think the instruction correctly stated the law.

██ Was the *res ipsa* rule, under the facts, applicable? In the brief defendant says this: "There is here involved a collision between two trains moving over appellant's track, only one of which was under the control, inclusive or exclusive, of appellant; whereas one of the cardinal requisites for the application of that doctrine (*res ipsa*) is that the exclusive control of the instrumentality producing injury must be in the person charged with negligence." In view of our ruling that the local law of Illinois made the employees of the M. & O., in law, the employees of defendant in so far as concerns responsibility for the death of Miller, and also in view of the fact that dispatch office employees of defendant controlled the movement of both trains, we rule that the *res ipsa* rule is applicable.

Is the judgment for $30,000 excessive? At the time of Miller's death, he was 56 years old and his expectancy was 16.73 years. His wife, who, as administratrix, is plaintiff, was 53, and her expectancy was 18.79 years. In 1939, deceased's earnings were $2843.02. From January 1, to July 1, 1940, his earnings were $1404. The jury was instructed that if the finding was for plaintiff, to assess damages "at such sum as you may find and believe from the evidence fairly and reasonably represents the present cash value, as of the date of the death of Ernest F. Miller, of such pecuniary benefits, if any, as you may find and believe the surviving wife of said Ernest F. Miller reasonably might have expected to receive from said Ernest F. Miller if he had not been killed." [See Michigan Central R. Co. v. Vreeland, 227 U. S. 57, 33 Sup. Ct. 192, 57 L. Ed. 417.] Plaintiff testified that for the home, her husband gave her "between $90.00 and $95.00 twice a month," and that since the death of her husband. "the amount of our bills is decreased by about $20.00 per month." It does not appear who may be included in *our*. We think that the rule of uniformity as to amount will be more nearly observed if the judgment is reduced $5,000. [See Hancock v. Kansas City Terminal Ry. Co., 347 Mo. 166, 146 S. W. (2d) 627, l. c. 630; Sibert v. Litchfield & M. Ry. Co. (Mo. Sup.), 159 S. W. (2d) 612, l. c. 618; Finley v. St. Louis-San Francisco R. Co., 349 Mo. 330, 160 S. W. (2d) 735, l. c. 740.]

If plaintiff will, within 10 days from the filing of this opinion, file here a *remittitur* of $5,000, the judgment for $25,000 will be affirmed, otherwise, the judgment will be reversed and the cause remanded. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.