## MILES v. PENNSYLVANIA R. CO.

### No. 10045.

United States Court of Appeals
Seventh Circuit.

June 2, 1950.

W. M. Keeley, Chicago, Ill., for appellant.

George F. Barrett, Edward Wolfe, William A. Morrow, Theodore Schmidt, P. J. Cronin, Chicago Ill., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This action was brought by the Administratrix of the estate of Delmar G. Miles, deceased, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for the decedent's death alleged to have been caused November 24, 1943, by defendant's negligence while Miles was allegedly working as an employee of the defendant. A trial before a jury resulted in a verdict for the defendant from which the plaintiff prosecutes this appeal.

The principal question presented is whether Miles, at the time of his death, was an employee of the defendant railroad company, or of an independent contractor, J. C. O'Connor and Sons. Inc. which, the defendant contends, was at the time of the occurrence, engaged in the construction of new and additional trackage for the defendant.

Section 1 of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, provides: "Every common carrier by railroad while engaging in" interstate commerce, "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee," to his personal representative "for such injury or death resulting in whole or in part from the negligence" of such carrier.

■ To establish a case of liability against such a carrier the claimant must establish that the injury or death was caused in whole or in part by the negligence of the carrier and that the injured person at the time of the injury was an employee of the carrier.

The complaint alleged that the decedent at the time of his injury was a servant for hire employed by the defendant in the maintenance of defendant's tracks, rails and roadbed, and that the injury was caused by the negligence of the defendant. The defendant's answer denied that at the time of decedent's injury he was an employee of defendant and also denied that his injury was caused by defendant's negligence.

The parties filed and read in evidence a written stipulation as to certain relevant facts and agreed that either party might introduce evidence not inconsistent therewith. The stipulation showed that the parties agreed as to the following facts: The defendant railroad company was engaged in interstate commerce. On its St. Louis division between the towns of Marty and Stubblefield, both in Illinois, its main line had for many years prior to June 1, 1943, consisted of a single track railroad laid on an irregular course. In order to shorten its track between said points, reduce grades and eliminate curves, the defendant on July 25, 1942, undertook a project to double track its line, a distance of 7.65 miles. The project cost $2,560,000.00 and resulted in the shortening of defendant's track almost a mile, in the reduction of curves and grades and in the elimination of seven wooden trestles and three grade crossings.

After the grading and filling was done on the project, the defendant, on June 1, 1943, contracted with J. C. O'Connor & Sons, Inc. to do the track work on the project.

The contract contained the following provision: "The Contractor in executing the work herein described shall furnish all superintendence, labor, tools, appliances, plant and materials, except as otherwise herein agreed upon, necessary to construct, build and finish same ready for use in accordance with plans and specifications. It is expressly understood and agreed that the Contractor shall be and remain an original private and independent contractor hereunder, and shall employ, pay from its own funds, and discharge all persons engaged in the performance of the work to be done by the Contractor hereunder, and all such persons shall be and remain the sole employees of the Contractor, and subject to its exclusive supervision, direction and control."

Miles, the decedent, was employed as a trackman on this job by J. C. O'Connor & Sons about six weeks prior to November 24, 1943, when he was killed; and on that date the contracted construction work was about 90% completed. All of Miles' wages up to the date of his death were paid by the O'Connor company which carried him on its payroll.

In the argument before this court, counsel for plaintiff conceded that Miles was the employee of an independent contractor and not of defendant up to November 2, 1943. On that date the two tracks between Marty and Stubblefield had been laid and the roadbed had been completed "except the work of surfacing, tamping and raising the tracks and rails", and defendant started running its trains over these new tracks. From this time, up to the time of his death, Miles was engaged "among other things, in surfacing, tamping and raising said tracks and rails"; the very work which the parties stipulated then remained to be done to complete the construction work covered by the contract. But, counsel for plaintiff contends that when the defendant commenced to operate its trains on these new tracks, Miles then, as a matter of law, became an employee of the defendant and was doing ordinary

maintenance work directly for the defendant. Plaintiff predicates this contention primarily on § 5 of the Federal Employers' Liability Act, 45 U.S.C.A. § 55, and on certain provisions of the contract between the defendant and the Contractor. Section 5 of the Act provides as follows: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void."

Admittedly the defendant could not have escaped the liability imposed by this Act by contracting with a contractor to take over the ordinary and necessary maintenance work on track which it used in interstate commerce.

When a prior appeal of this same case was before this court, 7 Cir., 158 F.2d 336, 337 we said that: "The question of whether decedent was an employee of the defendant and was governed by the Federal Employers' Liability Act was a question of fact to be determined in the trial of the case."

On that appeal we remanded the case to the trial court in order that all pertinent facts on the question might be submitted to the jury for its determination under proper instructions of the court.

■ The mandate of this court in that appeal having been followed and the question having been submitted under proper instructions of the court, we believe the evidence was sufficient to sustain a finding by the jury that the decedent at the time of his injury was not an employee of the defendant.

Plaintiff insists that the provisions of the contract between the defendant and the Contractor show that it was the intention of the parties that "maintenance * * * required after the tracks" were placed in service was to be considered and paid for as "additional" work and that any provision of the contract purporting to relieve the defendant from liability to anyone performing such work would be void under § 5 of the Act.

The fallacy in plaintiff's argument is the assumption that any work done on the track after November 2, 1943, when defendant first started running trains over the new tracks, was necessarily "maintenance" work. There was some conflict in the oral testimony on this question but the written stipulation of the parties stated that on November 24, 1943, the work on the contract was only 90% completed; that on November 2, 1943, to complete the roadbed, there remained to be done "the work of surfacing, tamping, and raising the tracks and rails"; and that from November 2, to the day he was killed the decedent was engaged in doing that type of work.

There was oral testimony tending to show that to "complete" a construction job on new tracks laid on new fills, it was necessary to run trains over the tracks to effect the initial settlement of the rails. There was also testimony indicating that the only supervision by the defendant over the work on which the Contractor and the decedent were engaged prior to decedent's death was by inspectors employed by the defendant to see that the work complied with the specifications of the construction contract and to point out any deficiencies to the Contractor's foreman. In our opinion, there was ample evidence to sustain a finding of the jury that the decedent at the time of his injury was not the employee of the defendant but was still working on the new construction work on which the O'Connor company was an independent contractor.

Plaintiff contends that at the time Miles was injured the O'Connor company had finished the construction work which it did as an independent contractor and was then simply acting as an agent of defendant in furnishing labor for ordinary maintenance work. The decisions cited by the defendant in support of this contention reveal factual situations entirely different from the situation in this case. The decisions cited involved situations where the railroad company had contracted for the performance of some of its regular and ordinary work, such as the loading and unloading of its cars or regular maintenance of its tracks. In the instant case the defendant contracted with the independent contractor to do new construction work, work which the defendant was not equipped to do. It would

be difficult to understand how a jury or a trial court under the facts of this case could infer that the contract for such work was made for the purpose of evading liability imposed by the Federal Employers' Liability Act. Robinson v. Baltimore & Ohio Railroad Company, 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849.

■ Plaintiff cites Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, O'Donnell v. Elgin J. & E. R. Co., 338 U.S. 384, 70 S.Ct. 200 and Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411, to support its contention that recent Supreme Court decisions "indicate a distinct trend toward liberal interpretation and sustaining liability" under the Federal Employers' Liability Act. These cases involved the Boiler Inspection Act, 45 U.S. C.A. § 22 et seq., and the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., as well as the Federal Employers' Liability Act. In none of these decisions was the employee relationship questioned. The Federal Employers' Liability Act was only for the benefit of the railroad companies' employees. To claim benefits under the Act, the claimant must establish his employment relationship, either by showing actual employment by the railroad company or by showing an intervening contract between the railroad company and a third person, which was void as an attempt by the railroad company to avoid liability under the Act, in violation of § 5. Here the evidence failed to indicate either actual employment by the defendant or a contract in violation of § 5.

Plaintiff also complains of giving of instructions numbered 14, 16, 17, 18 and 19. Plaintiff insists that instruction 16 "was a direction to the jury to find for the defendant without regard to anything in the record excepting the one claimed fact that O'Connor & Sons was an independent contractor".

■ Instruction 16 was as follows: "If you believe and find from the evidence, and under the court's instructions as to the law, that the said J. C. O'Connor & Sons, in performing the work that it and the deceased were engaged in at the time of the occurrence resulting in decedent's death, was an independent contractor, then you are instructed that there can be no recovery in this case and you should find the defendant not guilty."

This instruction required the jury to find for the defendant *only* if from the evidence and under the court's instructions as to the law the jury found that the O'Connor Company "in performing the work that it and the deceased were engaged in *at the time of the occurrence* resulting in decedent's death, was an independent contractor * * *." We think that this was a correct and proper instruction under the facts and the law here involved. It is true that this instruction did not define or explain "independent contractor". However, in the other instructions of which the plaintiff complained, the court fully explained what constituted work by an independent contractor. By still other instructions which the trial court gave at the plaintiff's request, the court presented for the jury's consideration the plaintiff's theory that if Miles at the time of his injury was doing ordinary maintenance work, he was an employee of the defendant.

Considered as a whole the instructions fairly and correctly presented the law involved in the questions of fact which the jury was asked to determine.

In its brief plaintiff devotes very little space to the question of whether defendant's negligence was the cause of decedent's injury. At the time of his injury decedent was walking between the rails of one of defendant's tracks. An oil train was passing, going in the opposite direction on the other track. An engine drawing a train in the same direction in which decedent was walking struck and killed him. There was conflicting evidence as to why decedent was walking away from the men with whom he was working, as to the speed of the engine which struck him, as to the visibility where he was walking and as to the warnings given to him of the approaching engine. Decedent had been working along these tracks for several weeks and knew the number of trains using the tracks. No reason was indicated for his walking between the rails instead of outside of the tracks where the engine could not have struck him.

Plaintiff seems to assume that the evidence on this question clearly establishes that the defendant was negligent, and that its negligence was the cause of decedent's death. The plaintiff cites only one authority on this question, Tiller, Executor, v. Atlantic Coast Line R. Co., 318 U.S. 54. 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967. In that case the trial court granted the defendant's motion for a directed verdict on the grounds: (a) that the evidence disclosed no actionable negligence, and, (b) that the cause of the death was speculative and conjectural. The Supreme Court in reversing the judgment of the trial court said, 318 U.S. page 67, 63 S.Ct. page 451: "* * * questions of negligence should under proper charge from the court be submitted to the jury for their determination. * * * We think that the question of negligence on the part of the railroad and on the part of the employee should have been submitted to the jury."

In our case the trial court did submit the question of negligence to the jury under instructions to which the plaintiff made no objection. The jury, among other things, were instructed: "If you believe from the preponderance of the evidence, under the instructions of the Court, that the plaintiff has proved the charges of negligence as alleged in her complaint, you should find the defendant guilty."

The court also instructed the jury as to what constituted ordinary care and on the question of contributory negligence.

After considering all of the evidence, we are of the opinion that the jury might reasonably have found and inferred that Miles' death was not caused by any negligence on the part of the defendant. It follows from this conclusion that neither the trial court nor this court is permitted to disturb the finding of the jury. As said in Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520: "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

The verdict here was a general verdict and no interrogatories were submitted upon any issue of fact. We, therefore, do not know whether the jury found against the plaintiff on the issue of the decedent's employment by the defendant, or on the issue of defendant's negligence causing the decedent's death, or on both of these issues. A finding on either issue against the plaintiff would have been sufficient to sustain the general verdict that the defendant was not guilty. Since there was evidence sufficient to sustain a finding against the plaintiff on either of these issues, the judgment of the District Court must be, and is, affirmed.