**MADDOX v. JONES et al.**

No. 365.

District Court, N. D. Alabama, W. D.

Nov. 19, 1941.

Partlow, LeMaistre & Clement, Foster, Rice, Madison & Rosenfeld, and George A. LeMaistre, all of Tuscaloosa, Ala., for plaintiff.

Benners, Burr, McKamy & Forman, of Birmingham, Ala., and McQueen & McQueen, of Tuscaloosa, Ala., for defendants.

McDUFFIE, District Judge.

The question presented is whether or not the complaint states a claim upon which relief can be granted.

The claim here is one of six complaints filed against the Gulf States Paper Corporation and a co-defendant in each case invoking the remedies provided in the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. It is understood by the court and by and between counsel that the order in this case will be entered in each case, the legal questions in each case being the same. The complaint reads as follows:

#### Complaint

I. Plaintiff brings this action for himself and for all other employees of the defendants similarly situated to recover from defendant unpaid minimum wages and unpaid overtime compensation in the amount of One Hundred Thousand and no/100 ($100,-000.00) Dollars, and an additional equal amount of liquidated damages, together with a reasonable attorneys' fee, pursuant to Section 16(b) of the Fair Labor Standards Act of 1938, (pub. No. 718, 76th Cong.,

**38**

52 Stat. 1060 [29 U.S.C.A. § 216(b)]) hereinafter referred to as the Act.

II. Jurisdiction is conferred on the Court by Section 41(8), 28 U.S.C.A. (Judicial Code) § 24, giving the District Court original jurisdiction "of all suits and proceedings arising under any law regulating commerce" and by Section 16(b) of the Act.

III. Defendant, Gulf States Paper Corporation, a corporation, is a corporation doing business under and by virtue of the laws of the State of Alabama, and at all times hereinafter mentioned was engaged in the manufacture and production of Kraft paper and wood pulp for interstate commerce at Tuscaloosa, Alabama. The goods so produced by the defendant, Gulf States Paper Corporation, are made of pulp wood, substantially all of which is hauled or shipped to the defendant's factory from points inside the State of Alabama. Substantially all of the goods manufactured by the Defendant, Gulf States Paper Corporation, during the times hereinafter mentioned have been produced for interstate commerce and have been sold, offered for transportation, transported, shipped and delivered in interstate commerce from the defendant's plant at Tuscaloosa, Alabama, to various places outside the State of Alabama. The defendant, Milton Jones, is engaged in the business of furnishing pulp wood to the defendant, Gulf States Paper Corporation, and plaintiff avers that the defendant, Milton Jones, is an employee of the defendant, Gulf States Paper Corporation, and in producing pulp wood for the defendant, Gulf States Paper Corporation, the defendant, Milton Jones, is acting within the line and scope of his employment.

IV. The goods manufactured and procured by the defendant, Gulf States Paper Corporation, compete with similar goods produced in other states, and defendant in such business competes with manufacturers and producers of paper and pulp wood in other states.

V. During the workweeks beginning October 24, 1938, and ending April 5, 1941, and continuously since that time, the defendant, Milton Jones, has employed, to-wit; fifty (50) men in the cutting and hauling of pulp wood. The goods produced by such employees during such period have been produced for interstate commerce and after processing, have been sold, offered for transporation, transported, shipped and delivered in interstate commerce from the defendant, Gulf States Paper Corporation's factory in Tuscaloosa, Alabama, to points outside the State of Alabama.

VI. In such business the defendants from October 24, 1938, the effective date of such Fair Labor Standards Act, to April 5, 1941, and continuously since that time, have employed plaintiff and others similarly situated for whom he sues as a wood cutter and stacker. Plaintiff and others similarly situated are employed by the defendants to cut timber into short lengths to be used for pulp wood and to stack said pulp wood for hauling to the factory of defendant, Gulf States Paper Corporation. The functions performed by the plaintiff and others similarly situated are operations necessary to the manufacture of paper and wood pulp, subsequently the paper of wood pulp is shipped outside the state. The duties of the plaintiff and employees similarly situated constitute the production of goods for commerce.

VII. During such period the defendants employed plaintiff and other employees similarly situated in the production of goods for interstate commerce and have failed or refused to compensate plaintiff and other such employees for such employment at rates not less than a rate of twenty-five cents (25¢) an hour and from October 24, 1939, at a rate of not less than thirty cents (30¢) an hour. The employment of plaintiff and others similarly situated at such wages was in violation of Section 6 of the Act [29 U.S.C.A. § 206].

VIII. During such period the defendants employed plaintiff and those employees similarly situated in the production of goods for interstate commerce for workweeks longer than forty-four (44) hours (from October 24, 1939, 42 hours) and have failed and refused to compensate him for such employment in excess of forty-four (44) hours (from October 24, 1939, 42 hours) in such workweeks at rates not less than one and one-half times the regular rate at which he was employed. The employment of the plaintiff and others similarly situated for workweeks in excess of forty-four (44) hours (from October 24, 1939, 42 hours) without compensating them for such excess hours at a rate not less than one and one-half times the regular rate at which they were employed was in violation of Section 7 of the Act [29 U.S.C.A. § 207].

IX. During the period from October 24, 1938, to October 24, 1939, the defendants

employed plaintiff and others similarly situated to cut and stack pulp wood as aforesaid for, to-wit, fifty-five (55) hours during each week and paid to the plaintiff and others similarly situated compensation which is equal to the rate of, to-wit, ten cents (10¢) per hour.

Under the provisions of said Act plaintiff and others similarly situated should have received not less than twenty-five cents (25¢) per hour for the first forty-four (44) hours in each such workweek, and thirty-seven and one-half cents (37½¢) per hour for each hour in excess of forty-four (44) in such workweek. Plaintiff and each of the others similarly situated were accordingly underpaid the sum of, to-wit, Five and 23/100 ($5.23) Dollars during each such workweek, or to-wit, Two Hundred Seventy-one and 96/100 ($271.96) Dollars for the said period.

During the period from October 24, 1939, to April 5, 1941, defendants employed plaintiff and others similarly situated as aforesaid for to-wit, fifty-five (55) hours each workweek and paid compensation to plaintiff and others similarly situated at a rate which is equal to, to-wit, ten cents (10¢) per hour. Under the provisions of said Act defendants were required to pay plaintiff and others similarly situated wages at the rate of thirty cents (30¢) an hour for a workweek of forty-four (44) hours and overtime compensation at the rate of not less than forty-five (45¢) an hour for each hour thereafter in excess of forty-four (44) in such workweek. Plaintiff was accordingly underpaid the sum of, to-wit, Four Hundred Eighty-six and 20/100 ($486.20) Dollars for the said period, and each of the others similarly situated were similarly underpaid.

Wherefore, plaintiff prays that judgment be awarded him and others similarly situated in the amount of One Hundred Thousand and no/100 ($100,000.00) Dollars for the unpaid minimum wage and unpaid overtime compensation and for an additional equal amount as liquidated damages, together with costs, and that the Court allow a reasonable attorneys' fee to be paid by the defendants.

█ It is not disputed that a contractual relationship of employer and employee must be specifically and definitely averred in order to state a cause under which the relief sought in this complaint can be granted. The complaint must clearly identify employer and employee and set out the failure of employer to perform his duty to the employee, in carrying out the obligations imposed upon him by the statute.

█ That pleadings must be construed against the pleader is a well established rule. It is also true that the Act of Congress under which the claim here is founded, should be liberally construed.

█ In an action against joint defendants a complaint must state facts sufficient to establish a joint obligation to the plaintiff on the part of all of the defendants growing out of the contract upon which the suit is founded. If the complaint seeks a joint recovery, and the facts pleaded show no joint obligation arose under the contract sued upon, no cause of action is stated. Handley v. Shaffer, 177 Ala. 636, 59 So. 286; Haines v. Cunha, 217 Ala. 73, 114 So. 679.

█ The complaint must clearly show not only an obligation on the defendants to pay the plaintiff employee his wages, but further state a violation of Sections VI or VII of the Act. The amount of the recovery is for the "unpaid minimum wages or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." The recovery is, therefore, not a penalty.

Section III of the complaint here avers that Milton Jones was an employee of the Gulf States Paper Corporation, acting within the scope of his employment, and it also states that Jones "was engaged in the business of furnishing pulp wood to the Gulf States Paper Corporation." Section V states that Jones employed fifty men to cut and deliver pulp wood to the Corporation. In Sections VI, VII, VIII, and IX of the complaint, Jones is referred to as an employer in that he is designated as one of the defendants. In reading the complaint a question arises as to whether Jones was an employee or an employer. He can't be both, yet the complaint makes him so. Mr. Justice Somerville said, speaking for the Supreme Court of Alabama in Gillis v. White, 214 Ala. 22, 106 So. 166, 167:

"Where a complaint declares on a contract as made with the plaintiff by one of the defendants as the agent of another defendant, it states no cause of action against the agent defendant. When one contracts merely as the agent of a disclosed principal, he binds either his principal or himself, but not both; and a joint action against both involves a practical as well as a legal anomaly.

"If the principal was bound, as intended, the agent cannot be held liable on any principle of law or justice."

See, also, Anderson v. Timberlake, 114 Ala. 377, 386, 22 So. 431, 433, 62 Am.St.Rep. 105: "The legal presumption is, when a known agent deals or contracts within the scope of his authority, that credit is extended to the principal, and not to the agent; and that the dealing is the act, or the contract is the engagement, of the principal alone, as if he were personally present and acting or contracting."

The language "engaged in the business of furnishing pulp wood" is very significant. It may mean that Jones was himself actually cutting the wood and hauling it, and if so, he occupies the same status as the fifty men he hired. In the general acceptation of this language, however, Jones was in an independent business of his own, and therefore a contractor to furnish pulp wood to the Corporation, in which event he was not an employee as defined in the Act, but an employer.

When the defendant Jones hired the fifty men, if he, in doing so, acted as the agent or employee of the Gulf States Paper Corporation, the Corporation is responsible for the wages to be paid the employees he hired. The Corporation then became the employer. If however, Jones in hiring the employees was in fact the employer and the Corporation did not join him in contracting with the employees, then Jones acted independently of the Corporation and he alone must be held responsible for any failure on his part to carry out the provisions of the Act. It would be, in the opinion of this court, a strained construction of the statute to hold that Jones could be both an employee and an employer at one and the same time. The relationship of both Jones and the Corporation respectively to the employees suing here should be more clearly and definitely stated in the complaint. If he were an employee, as the court understands that term and construes the meaning of employee as defined in the statute, there is no cause of action against him.

It is clear to this court that Sections III and V of the complaint cannot be reconciled with Sections VI, VII, and IX.

The use of the words "defendants employed" in Sections VI, VII, VIII and IX cannot be construed as overruling the positive averments in Sections III and V. No direct or definite averment is made that the defendant Corporation acted jointly with Jones in hiring the fifty men employed by him, in using the words "The defendants employed" in Sections VI, VII, VIII, and IX, when read with Sections III and V. The only connection given the Corporation in the complaint must be an assumption that because the Corporation received the pulp wood, it "suffered or permitted" the plaintiff to work. This language cannot be applied to the Corporation if it did not obligate itself to pay the wages of the employees.

While the definition of "employ" is "to suffer or permit to work", this cannot be construed to mean that an employee hired by a third party, the product of his labor being ultimately used for the benefit of the defendant, is employed or is "suffered or permitted to work" by the defendant alleged to have ultimately received the product upon which he labored. Such an employee may hold the third party responsible, but not the defendant.

Employer includes "one acting directly or indirectly in the interest of an employer in relation to an employee." This language means there must be a contract of employment to constitute the relationship, and necessarily there must be an employer and an employee.

Judge Caillouet, of the Eastern District of Louisiana, in the case of David v. Boylan's Private Police, D.C., 34 F.Supp. 555, 556, in a well considered opinion, discusses the Fair Labor Standards Act and granted a motion to dismiss one of the codefendants because the complaint did not state a cause of action against the defendant dismissed. This court is in thorough accord with the following language of Judge Caillouet:

"By § 3 of the Fair Labor Standards Act, Title 29 U.S.C.A. § 203, one is informed that an 'employee' includes any individual employed by an employer, and that to 'employ' includes 'to suffer or permit to work'.

"Plaintiff does not contend that Rickert Rice Mills, Inc. can be legally characterized as his 'employer', except if it be held that, after said Rickert Rice Mills, Inc. contracted with the Boylan's Private Police, Inc. for watchman service, and plaintiff, by direction of his employer, Boylan's Private Police, Inc., appeared on and about the premises of Rickert Rice Mills, Inc. (to then and there discharge for his employer,

Boylan's Private Police, Inc., the watchman service contracted by said Boylan's Private Police, Inc., to be furnished the other party contractant, Rickert Rice Mills, Inc.), the said Rickert Rice Mills, Inc., suffered or permitted plaintiff 'to work', and that, simply because this so happened, Rickert Rice Mills, Inc. legally became the 'employer' of plaintiff, and made itself amenable to the provisions of the Act, particularly § 6, § 206, Title 29 U.S.C.A. for instance, which provides what 'every employer shall pay to each of his employees', etc.

"Plaintiff's position is legally untenable, and Defendant Rickert Rice Mills, Inc.'s motion, praying for the dismissal of plaintiff's complaint against mover on the ground that such complaint fails to state a claim upon which relief can be granted the plaintiff against said Rickert Rice Mills, Inc., under the provisions of the Fair Labor Standards Act, is hereby granted, and the Plaintiff's action against said Rickert Rice Mills, Inc., is accordingly dismissed."

██ Employees of an independent contractor are not the employees of a contractee although the work done under the contract is for the ultimate benefit and use of the contractee. In Bowman v. Pace Co., 119 F.2d 858, 860, the opinion of the Fifth Circuit Court of Appeals, speaking through Judge Sibley in passing upon the Fair Labor Standards Act, it was held: "The strongly contested issue is whether he was the employee of the Pace Company at all. If not, he cannot recover of that Company. It is not the purpose of the Fair Labor Standards Act to create new wage liabilities, but where a wage liability exists, to measure it by the standards fixed by law. If one has not hired another expressly, nor suffered or permitted him to work under circumstances where an obligation to pay him will be implied, they are not employer and employee under the Act."

In a more recent case of the Fifth Circuit Court of Appeals, Whatley v. Great Southern Trucking Co., 123 F.2d 143, decided November 6, 1941, Judge Holmes held that an employee of a "commission agent" of the Trucking Company was not an employee of the Trucking Company.

In construing the meaning of the word "employee" in the Social Security Act, 42 U.S.C.A. § 301 et seq., the Tax Bureau has ruled that in order to constitute persons employees, the usual relationship of master and servant must exist. In a recent ruling of the Bureau, in United States Law Week, Vol. 9, Section 2, page 2143, it was stated:

"Individual performing services in cutting, skidding and hauling timber under contract with land owner was not employee of land owner for purposes of social security taxes.

"The Company owning the tract of land entered into a contract with the individual for removal of the timber therefrom and delivery of the logs to the Company's sawmill. The individual was given exclusive right to cut, skid and haul all of the merchantable timber, estimated to approximate several million feet. The individual agreed to complete the contract within the specified time, and was paid a stated amount per thousand feet of timber cut and delivered.

"The individual is known in his locality as a 'logging contractor' and offers his services as logging contractor to the general public. He erected camp buildings at his own expense wherein he fed and housed a logging crew, and furnished all of the equipment, which was of substantial value, and bore all of the operating expenses. He personally hired and paid the members of the crew and controlled all of the details of their work.

"The individual was not an employee of the company owning the land. He was, however, the employee of the individuals comprising the crew for employment tax purposes (See S.S.T. 396, 9 LW 2092).

██ This court is of the opinion that the definitions in the Act were not intended by Congress, however moved it was by humanitarian impulses, to destroy the well founded and long established rules fixing the status and affecting the relationship of employer and employee in actions based upon that relationship. It is not the province of courts to give to words used in the statute a strained or unreasonable meaning. It is difficult to believe that Congress intended to make the employee an employer or to change the relationship existing between one who has obligated himself to pay, and another obligated to labor for such pay.

██ A court should not, by a masterly use of words or by twisting their meaning, give to a statute a construction other than was intended by the law makers. This court is of the opinion that such would have to be done in holding that the complaint here properly avers that the Gulf States Paper Corporation and Milton Jones acted jointly

in fixing the relationship of employer and employee between the plaintiff and the defendants, or that a cause of action has been properly averred against either of the defendants.

 The Fair Labor Standards Act was designed, amongst other things, to improve labor conditions with reference to wages and hours and add to the welfare generally of those who work in industry engaged in interstate commerce, as well as to lighten the burdens of that commerce by a more efficient and expeditious flow of goods. Certainly interstate commerce would become hazardous if not impossible, if the manufacturer or every industry in interstate commerce is held to be responsible for the conduct or all the sins of omission and commission of those from whom they procure the necessary material for the manufacture of goods placed on the market. It is difficult to believe that Congress intended to place such a burden upon the industries of the nation, and if so, in passing the Fair Labor Standards Act, we must believe that it would have been more specific and definite in writing language designed to effect that purpose.

If the pleader in drawing the complaint, was seeking to make the Corporation responsible for the acts and doings of defendant Jones, he does so in Section III but in following this section with the other sections designating Jones as a co-defendant, he confuses the status of Jones as well as that of the Corporation, and makes it impossible, in reading the complaint as a whole, to determine who is, in fact, the employer as defined in the statute.

 In determining the term "employ" to mean "to suffer or permit to work", undoubtedly Congress was trying to hold every manufacturer or industry engaged in interstate commerce responsible for connivance or collusion with anyone who assumed the status of an independent contractor to furnish raw material when in fact he was merely the agent or servant or employee of the manufacturer. In other words, the purpose of the Act was to protect the employee against anyone whose real status in bringing about a contractual relationship in employment is not bona fide. The complaint here contains no suggestion of collusion between the defendants,

and this court cannot read such into its language. It is impossible to read into it a claim that the Paper Corporation, through its officers or duly authorized agents for such a purpose, entered into a contract with the plaintiff whereby it became obligated to pay for his services.

 It is difficult to conceive instances wherein an industrial plant, through its management "suffers or permits to work" within the meaning of the Act, employees with whom the plant has no contractual relationship as employer and employee or as master and servant. It is a matter of common knowledge that thousands of industries contract for services or material to be furnished by or through independent contractors thousands of miles away, or even on the premises of the plant or industry which receives the ultimate benefit of the labor performed by the employees of the contractor. Those industries, in a sense, "suffer or permit" such employees to work, but not within the sense or meaning of "suffer or permit" as used in the Fair Labor Standards Act.

 This court is of the opinion that Congress did not intend to hold the beneficiary industry or plant responsible for the standards and payment of wages, or the wrongs and errors committed by independent contractors in dealing with their employees. If the lawmakers had thought it feasible or conducive to the welfare of labor and to interstate commerce, to put such responsibilities on a lumber manufacturer, a furniture plant, a paper mill, a steel maker, a shipbuilder, or even the merchants who sell and ship goods in interstate commerce, they would have so provided in plain and definite language. Not doing so, the only conclusion is that such was not intended and has not yet been done.

Granting the pleader in drawing the complaint in this case apparently has assumed that Congress intended and did fix the responsibility as suggested above, he fails to aver clearly facts sufficient to invoke the remedies of the statute, and the motion to dismiss the complaint must be granted. The appropriate order will be entered in accord with this opinion, and the plaintiff will be allowed twenty days within which to file amendments to the complaint.