### WALKER v. ALTMEYER et al.
### No. 2602.

District Court, E. D. New York.

Oct. 1, 1942.

John E. Walker, plaintiff in person.

Francis M. Shea, Asst. Atty. Gen., and Harold M. Kennedy, U.S. Atty., of Brooklyn, N. Y. (Sidney J. Kaplan, Sp. Asst. to the Atty. Gen., and Jerome C. Strumpf, Atty., Department of Justice, of New York City, of counsel), for defendants.

ABRUZZO, District Judge.

This proceeding is brought pursuant to § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for a review of a decision of the Social Security Board, hereinafter referred to as the Board, in the matter of the application of the plaintiff, John E. Walker, for benefits under the Social Security Act Amendments of 1939, 53 Stat. 1362, 42 U.S.C.A. § 401 et seq.

There follows an epitome of the essential facts involved in this action.

Plaintiff attained the age of sixty-five (65) years on October 4, 1938.

An application for a lump sum payment under the Social Security Act of 1935, 49 Stat. 622, 42 U.S.C.A. § 401 et seq., was filed by him on October 14, 1938. A lump sum in the amount of $107.80 was paid to him based on wages of $3,080 received from one Pliny W. Williamson, a practising attorney, during the period from January 1, 1937 to October 4, 1938.

Subsequently, or on August 10, 1939, the Social Security Act was substantially amended, 53 Stat. 1362, 42 U.S.C.A. § 401 et seq. Under the amendments, provision was made for the immediate payment of monthly primary insurance benefits to those eligible therefor. § 202(a) of the Act, 42 U.S.C.A. § 402(a). Plaintiff was entitled to such primary insurance benefits.

He filed his application for same on January 3, 1940, based on wages quoted hereinbefore and on April 4, 1940, the Bureau of Old-Age and Survivors' Insurance of the Social Security Board, hereinafter called the Bureau, certified to him a monthly insurance benefit of $24.03 to begin with the month of January, 1940. From plaintiff's total benefits of $120.15 for the first five months, the lump sum payment of $107.-80 theretofore paid to him was deducted, leaving a balance of $12.35 which was paid to him at the end of May of 1940. Plaintiff received and accepted regular monthly benefits of $24.03 thereafter through the month of February of 1941.

In 1940 and 1941, the Bureau received reports showing that Pliny W. Williamson had paid to plaintiff amounts totalling $1,138 for 1939 and $1,176.25 for the year 1940. After conducting an investigation as to these payments, the Bureau concluded that plaintiff had been employed by Pliny W. Williamson and had received wages of $15 or more per month during the years 1939, 1940 and part of 1941. Thereupon, the Bureau cancelled the monthly payments to the plaintiff, effective June 1941, and ruled that under § 203(d) (1) of the Act, 42 U.S.C.A. § 403(d) (1), deductions would have to be made from future payments due plaintiff in an amount equal to the fourteen (14) monthly benefits received by him while earning wages of more than $15 per month in employment. Penalties for failure to report employment were also included.

Disagreeing with the decision of the Bureau, plaintiff applied for and obtained a hearing before a referee of the Board. A hearing took place and testimony and other evidence was taken. In an opinion, dated November 27, 1941, the referee found that plaintiff was employed for wages in excess of $15 per month from January, 1940, to February, 1941; and that deductions should be made in accordance with the decision of the Bureau.

Dissatisfied with the conclusions reached by the referee, the plaintiff appealed to the Appeals Council of the Board. The Council affirmed the decision of the referee and adopted his findings as its own on January 23, 1942.

Seeking a review of the decision of the Appeals Council that he rendered services in the employment of Pliny W. Williamson for wages in excess of $15 per month from January, 1940, through February, 1941, the plaintiff instituted this action.

Throughout this entire proceeding before the Bureau, referee and Appeals Council, plaintiff has maintained that the payments he received from January, 1940, up to February, 1941, were not in the nature of wages. It is his contention that he was not an employee working for wages but an independent contractor performing professional services for legal fees; and consequently, no deductions under § 203 (d) (1) of the Act, 42 U.S.C.A. § 403(d) (1), should be made.

From the presentation of the facts involved, it is learned that the relationship between the plaintiff and Williamson began in 1927, when plaintiff rented office space from the latter for a stipulated monthly rental and paid for his own telephone and stenographic service. Approximately a year later, a new arrangement ensued whereby plaintiff was to receive a stated monthly salary for legal services performed for Williamson, with use of the office to carry on legal work of his own. This new plan was defined or described in a letter written by Pliny W. Williamson to the plaintiff, in January 1928, to wit:

"We are to be privileged to use, for professional services, such of your time as we may require, the assignments to be made with careful consideration of your own work. In payment of such services you are to have your present space, rent free, and in addition $100 per month. You and we both will keep a record so that, should this be unfair to either, a proper adjustment may later be made."

Later, Williamson increased the monthly payment to $200 which continued until January, 1938, when it was again reduced to $100. These payments of $100 per month in wages were continued until April 30, 1938.

The foregoing statement of facts is not in dispute.

The relations between the plaintiff and Pliny W. Williamson subsequent to April 30, 1938, are indicated in a communication from Williamson to the plaintiff, bearing the date of May 3, 1938, which reads:

"3 May, 1938

"Dear John:

"When the Social Security tax was being deducted you raised the question that your relationship here was not that of an employee. Whether it has been or not, I mentioned to you on April 30th a change in the arrangement that we have made.

"When you first became associated with me you desired office space. I told you that we would arrange to give you office space in exchange for certain services. Later that arrangement was extended and, in addition to the office space, you were paid a regular salary. The office space which you occupy represents an overhead to me of at least $100 per month. I propose that hereafter you be paid a fixed amount for each hour of work that you do for me; the first credits for this work to be applied to the payment of your rent, the balance, if any, to be given .you by a check each month. It is understood that through the course of the year you will be given sufficient work to discharge your rent, though there be not sufficient for any one month. Under all the circumstances it seems to me that a proper allowance is $5 per hour. This would apply on matters now in the office. In the event that you were assigned any work on litigation not now in the office, we should come to a separate understanding.

"This would be effective from May 1, 1938.

"Sincerely yours,
"(Signed) Pliny W. Williamson
"John E. Walker, Esq.,
"115 Broadway
"New York City.
"Approved
"May 5, 1938
"(Signed) John E. Walker."

At this point, the plaintiff and defendants disagree. Each places a different inference on the written agreement in letter form, dated May 3, 1938, quoted above. Plaintiff argues that it shows a definite change in the relationship between him and Williamson from that of employee-employer to that of an independent contractor on his part selling his professional services to Williamson.

The Board contests this viewpoint and declares that the new plan did not effect a change in the type of arrangements existing theretofore between the plaintiff and Williamson.

Both plaintiff and the Board agree that up until May 1, 1938, John E. Walker, the plaintiff, was an employee of Pliny W. Williamson. Whether or not this arrangement changed depends upon the implication to be drawn from the testimony adduced before the Board's administrative agents or agencies and the agreement in the form of a letter, dated May 3, 1938. This constitutes the sole issue to be determined by this Court.

The regulations of the Board define "employee" as follows:

"Regulations No. 3 (Part 403, Title 20, Code of Federal Regulations, 1940 Supp.) Section 403,804:

"Who are employees—Every individual is an employee if the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

\*    \*    \*    \*    \*    \*

"Generally, physicians, lawyers, dentists, veterinarians, contractors, subcontractors, public stenographers, auctioneers, and others who follow an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees.

"Whether the relationship of employer and employee exists will in doubtful cases be determined upon an examination of the particular facts in each case. \* \* \*

"The measurement, method, or designation of compensation is also immaterial, if the relationship of employer and employee in fact exists. \* \* \*"

Reflecting upon the testimony and the written agreement of May 3, 1938, aforesaid, there is nothing ambiguous about its terms. The relationship of employer and employee terminated. The power to discharge the plaintiff was eliminated and in its stead was the right to dispossess the tenant because now the relationship of landlord and tenant had been established, the tenant at large to practice his profession as an independent contractor. Prior to this new arrangement, plaintiff was employed by Pliny W. Williamson at a fixed salary to perform legal services. After the signing of the agreement, plaintiff became an independent contractor in his chosen profession as well as a tenant.

Comparable to this situation would be that of a stenographer hired to do stenographic work at a fixed salary. Thereafter, she is discharged and her former employer rents a room in his office suite to her so that she may carry on as a public stenographer. The mere fact that her late employer gives her his stenographic work to do, payment for which is to be credited. against the rent, would not make her an employee. She would be an independent public stenographer, conducting her own.

business. Is it not clear that plaintiff is in the same position, except that he is not engaged in pursuing a business career but is engaged in the practice of his profession, but an independent contractor just as the public stenographer?

The test would seem to be "What is the understanding between the parties themselves?". In the case at bar, the letter terminated the relationship of employee and employer and established a new arrangement whereby plaintiff could engage in the practice of the law independently.

The guarantee that Williamson would give plaintiff enough work commensurate of the rent did not create the relationship of master and servant or employee and employer. Such arrangements are often made to induce an individual to remain in an office where his particular services would be an asset at certain times for a fee and conditions do not warrant employing him at fixed wages. It is apparent that plaintiff agreed to sell his services to a limited degree for a certain fee per hour to Williamson, induced by the promise of enough legal work to cover his rent with the right to engage in his profession as an independent contractor.

The Board's conclusion that the written agreement of May 3, 1938, did not change the arrangements existing before that date is untenable.

The legal principle governing this case is enunciated in Burruss v. Early, Collector, D. C., 44 F.Supp. 21, 26, wherein it was said:

"I find no case, nor has any been cited to me, in which a federal court has applied the law to the factual situation existing here. Of course, there have been decisions of federal courts in which the meaning of the terms 'employer' and 'employee', as used in the Social Security Act, have been considered. It has been stated, 'there is nothing in the Social Security Act which suggests that the terms "employer" and "employee" should receive anything but their ordinary construction.' Indian Refining Co. v. Dallman, D.C., 31 F.Supp. 455, 460, affirmed and opinion approved and adopted 7 Cir., 119 F.2d 417. Both in this case and the case of Texas Co. v. Higgins, 2 Cir., 118 F.2d 636, it was held that an oil distributor was an independent contractor and not an employee within the contemplation of the Social Security Act. The case of Kentucky Cottage Industries, Inc.,

v. Glenn, D.C., 39 F.Supp. 642, held that persons making comforters, quilts and similar articles by hand, under a contract with the plaintiff, were independent contractors and not employees under the Act. In the case of In re Ten Eyck Co., Inc., D.C., 41 F.Supp. 375, it was held that an orchestra leader, whose orchestra played for an hotel, and was compensated by a lump sum payment under an oral contract, was an independent contractor and not an employee of the hotel under the provisions of the Act. In the cases of Jones v. Goodson, 10 Cir., 121 F.2d 176, and Kaus v. Huston, D.C., 35 F.Supp. 327, it was held that the persons there involved, drivers of taxicabs, were employees and not independent contractors. However, irrespective of their ultimate conclusions, all these cases recognize that the Social Security tax 'does not extend to instances where persons performing services are independent contractors.' Jones v. Goodson, supra, 121 F.2d page 179."

In the case of Robinson v. Baltimore & Ohio R. R. Co., 237 U.S. 84, at page 94, 35 S.Ct. 491, at page 494, 59 L.Ed. 849, it was said:

"We are of the opinion that Congress used the words 'employe' and 'employed' in the statute in their natural sense, and intended to describe the conventional relationship of employer and employee. It was well known that there were on interstate trains persons engaged in various services for other masters. Congress, familiar with this situation, did not use any appropriate expression which could be taken to indicate a purpose to include such persons among those to whom the railroad company was to be liable under the act.

"We conclude that the plaintiff in error was not an employee of the defendant company within the meaning of the employers' liability act, [45 U.S.C.A. § 51 et seq.] and that the judgment must be affirmed."

Also interpreting the relationship of employee and employer as compared with that of independent contractor is the matter of Commissioner of Internal Revenue v. Modjeski, 2 Cir., 75 F.2d 468, at page 471, wherein the Court observed:

"As in Underwood v. Com'r [4 Cir.], 56 F.2d 67, it will be admitted, that the purpose of employing the respondent was to have him direct how to work out the problems confronting the commission. His

work, as to plan and method, must have been beyond the control of the commission of laymen, and, in this sense, there was a contract to sell services rather than employment of the respondent to perform services."

The decision in the matter of Burnet, Commissioner, v. McDonough, 8 Cir., 46 F.2d 944, held that an attorney hired as counsel at a salary was not an employee but an independent contractor. The Court said at page 945 of 46 F.2d:

"It is clear to us that, under the decisions of the Supreme Court and of this court, respondent was not an employee as that term is used in the statute, but that he was an independent contractor. The board reserved no right to direct him as to how his work should be done. He was engaged in the general practice of law. It placed its legal matters in his hands for him to take care of by his own means and methods, relieving it from responsibility therefor. It exercised no such control over him as characterizes the relation of employer and employee. The board would not assume to know how a lawyer should carry on his work. He was engaged to render legal services just as he would have been engaged by a private individual. There was no difference in his relationship with this board from that with any private client who may have paid him $500 a year to draw his contracts and look after some of his legal work, and agreed to pay him additional compensation if he had to go into court."

See, also, Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384; Indian Refining Co. v. Dallman, 7 Cir., 31 F.Supp. 455; and Texas Company v. Higgins, Collector, D.C., 32 F.Supp. 428.

█ The preponderance of authority applicable to the instant case is indicative of the fact that the plaintiff, John E. Walker, was an independent contractor and not an employee. The Board, through its administrative agents or agencies, reached an erroneous conclusion and the decision rendered must of necessity be reversed.

Jurisdiction to entertain this action is conferred by § 205(g) of the Act, 42 U.S. C.A. § 405(g). In authorizing the review of the administrative decision, the act provides that "as part of its answer the Board shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." The Board has complied with this provision.

The statute also provides: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Board."

█ Under the sections just cited, this Court assumed jurisdiction in the matter of Kandelin v. Kandelin, 45 F.Supp. 341, and exercising its authority remitted the case to the Board for the taking of further testimony which the Board had neglected to entertain and which this Court believed pertinent to the issue. After complying with this direction, a judgment was later entered in conformity with the decision which reversed the conclusions reached by the Board.

In the matter of Carroll v. Social Security, D.C., 44 F.Supp. 790, the procedure as followed herein was approved.

Therefore, the conclusions of law, upon the facts as found, are:

(1) That the relationship between Pliny W. Williamson and John E. Walker, plaintiff, after April 30, 1938, was not that of employer and employee, but that plaintiff was an independent contractor.

(2) That no wages were earned by plaintiff from May 1, 1938, to October 4, 1938, and during 1939 in the employment of Pliny W. Williamson.

(3) That wages of $15 or more per month were not earned by plaintiff from January 1, 1940, to and including the month of February, 1941.

(4) That plaintiff did not earn wages after January 1, 1940, in the employ of Pliny W. Williamson and therefore was not a person "having knowledge thereof who failed to report".

(5) That plaintiff is entitled to receive the monthly benefit of $24.03 from the date payments were cancelled and they are to continue until his death or earlier employment at a wage of $15 or more per month.

Settle order on notice.