**YELLOW CAB CO. OF D. C., Inc., v. MAGRUDER, Collector of Internal Revenue.**
Civ. A. No. 1680.

District Court, D. Maryland.

April 2, 1943.

John E. Hughes, of Washington, D. C., for plaintiff.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., and Jos. W. Burns and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., for defendant.

CHESNUT, District Judge.

This is a suit by the plaintiff taxpayer to recover $7,490.93 paid to the Collector of Internal Revenue at Baltimore, Maryland, for federal insurance contribution taxes for the period January 1, 1941 to September 30, 1941, together with interest thereon.

The tax involved is levied on employees and employers with respect to employment, by Internal Revenue Code, §§ 1400 and 1410, 26 U.S.C.A. Int.Rev.Code, §§ 1400 and 1410. These sections amended the original Social Security Act of 1935, 42 U.S.C.A. § 301 et seq. Section 1400 levies a tax upon the income of every individual equal to one per cent. of the *wages received by him* during the period in question with respect to employment (as defined in section 1426(b). Section 1401 requires this tax to be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid. Section 1410 also imposes an excise tax, with respect to having individuals in his employ, upon the employer at the rate of one per cent. of the *wages paid by him,* for the period in question. Section 1426(a) defines wages, with some exceptions not here material, as a remuneration for employment, including the cash value of all remuneration paid in any medium other than cash. Section 1426(b) defines employment as "any service of whatever nature, performed * * * by an employee for the person employing him."

The applicable Treasury Regulations 106 section 402.204 further defines who are employees, in part as follows: "Every individual is an employee if the relationship between him and the person for whom he performs a service, is the legal relationship of employer and employee. Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient that he has the right to do so. * * * Whether the relationship of employer and employee exists will, in doubtful cases, be determined upon an examination of the particular facts in each case."

Section 402.227 of the Regulations further defines wages. In part it provides "The name by which the remuneration is designated is immaterial. That is, salaries, fees, bonuses, and commissions on sales or on insurance premiums or wages are within the meaning of the Act, if paid as compensation for employment. The basis upon which the remuneration is paid is immaterial in determining whether the remuneration constitutes wages. That is, it may be paid on the basis of piece work, or a percentage of profits; and may be paid hourly, daily, weekly, monthly or annually. The medium in which the remuneration is paid is also immaterial."

■ It is obvious from the statute and regulations that the tax is not payable unless (1) there is an employer and employee, and the relationship of employment between them; and (2) wages are paid by the employer to the employee.

■ There are a number of other federal statutes which are based on the employer-employee relationship, including the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. (similar to State Workmen's Compensation Acts) and the

Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The statutory definitions of employer, employee and the employ are in very general terms, and should be understood in "their natural sense, and intended to describe the conventional relation of employer and employee". Robinson v. B. and O. R. Co., 237 U.S. 84, 35 S.Ct. 491, 494, 59 L.Ed. 849; Divine v. Levy, D. C., 36 F.Supp. 55; Maddox v. Jones, D. C., 42 F.Supp. 35, 40. This view has been expressed in numerous cases dealing specifically with the Social Security Act. Anglim v. Empire Star Mines Co., 9 Cir., 129 F.2d 914; Texas Co. v. Higgins, 2 Cir., 118 F.2d 636; United States v. Griswold, 1 Cir., 124 F.2d 599; Indian Refining Co. v. Dallman, D.C., 31 F.Supp. 455, affirmed 7 Cir., 119 F.2d 417; Walker v. Altmeyer, D.C., 46 F.Supp. 790; Burruss v. Early, D.C., 44 F.Supp. 21.

The conventional relation of employer and employee is also that known in the law as master and servant, the latter as distinguished from an independent contractor. And as appears from the regulation above referred to, there are certain legal tests to distinguish the two relationships. Probably the most important of these tests is whether the alleged master in any case has the right, even if he does not exercise it, to control and direct the alleged servant, not only as to *what* shall be done but *how* it shall be done. Each case depends upon its own facts and circumstances, and in doubtful cases it is necessary to examine the particular facts to answer the question. In the brief of counsel for the defendant in this case it is frankly said "it may be conceded at the outset that this (case) is in the class of doubtful cases which must be resolved by an examination of the particular facts of the case. * * * If the court concludes that the relationship between the parties was one of leasing the taxicabs, then the matter is at an end and there is no liability for the tax."

In this case I have made a separately stated finding of facts to which reference may be made, and it is therefore unnecessary to here repeat the facts in any detail. The legal problem here is to determine what real relationship there was between the plaintiff and the persons who drove the cabs. I find it was not that of employment, but of leasing or hiring. We must distinguish between that controlling aspect of the case, and other incidental questions such as whether the Yellow Cab Company is, by virtue of its method of doing business and particularly its public advertising matter, estopped to deny liability to the public, either as passengers or pedestrians, or others, for injuries which may result from the negligent driving of the cabs. Many decided cases on generally similar factual situations have very properly held a cab company such as the plaintiff in this case, to liability to the public, even when the real relationship between it and the drivers of its cabs is not that of employer and employee, or master and servant.

It may seem surprising, before hearing the evidence in a particular case, that the relationship between a cab company and the drivers of its cabs is not that of master and servant. But the question is really not new in this case because many years ago just such a legal question came before the English Court of Appeal and also in another case before the House of Lords as to certain London cabs. The leading case, which has frequently been quoted, is that of Doggett v. Waterloo-Taxicab Company, Ltd., Law Reports of 1910, Vol. 2 K. B. page 336. The case arose under the British Workmen's Compensation Act of 1906. The suit was filed against the cab company by the widow of a driver who, while using the cab, sustained injuries from the effect of which he died. The essential facts were that the company's drivers were paid a percentage of the takings registered by the taxicab meters of the cabs. When a driver took out a cab from the yard he went where he pleased, and kept the cab some times until the next day, or for several days, and except by refusing to let a driver have a cab the next time he applied for one, the company had no control over and could not dismiss him. It was held in the case that the relation between the company and the deceased driver was not that of master and servant and the claimant was not entitled to compensation. In his separate opinion Mr. Justice Buckley said, "* * * upon the facts in this case I can find nothing to show that the owner retained over the driver of the cab any such control as would support the relation of master and servant". And it was also stated in the facts of the case, "It was admitted that, except by refusing to let a driver have a cab the next time he applied for one, the company had no control over the man and could not dismiss him." There was, however, some evidence to the effect

that a notice was exhibited in the respondent's yard stating that "drivers not daily noting up extras would be discharged". In his separate opinion Mr. Justice Kennedy said, 'My present view is that the legal position of this taxicab driver was that of a bailee hiring the cab on any day on which he agreed with the Waterloo Cab Company, Ltd., to take a cab for a day from them upon the terms of handing over to them 75% of the day's takings, calculated by a certain method and keeping only 25% for himself."

Another case very similar on the facts came before the House of Lords in 1911, Smith v. General Motor Cab Company, Ltd., Appeals Cases Law Reports 1911, page 188. In the opinion of one of the Lords Justices it was said, "In my opinion (the) contract between respondents and the appellants lacks every incident of a contract of services. No wages are paid. No notice of termination on either side is given or is necessary. No control of the work is exercisable by the respondent. I should describe the drivers as clients of the company and bailees of the cabs." In his separate opinion Lord Shaw of Dunfermline stated, "My Lords, in this case I have only three propositions to state, each in a sentence. In my opinion quoad the cab, the contract was an ordinary contract of locatic rei. Quoad the public, the relation of the cab driver to the cab owner was, in my opinion, one of agency; so that, for negligence in the conduct of his business, both principal and agent might naturally be responsible to the public. Quoad the employer himself, the question whether the relation of master and servant existed between the employer and driver is one of fact. The fact has been found in this case, that no such relation did exist. That point depends on many circumstances—the scope of the employment, the form of remuneration, the scope within which the person driving the cab has power to regulate his own times and seasons, or to drive or not to drive a cab as he wishes. These are formal illustrations of the variety of things to be considered. I think that there was in this case ample evidence to confirm the finding of the County Court Judge."

In 1937 a case on facts very similar to the instant case was decided in the District of Columbia in which the widow of a cab driver presented a claim under the local Workmen's Compensation Act for compensation for herself and infant children owing to the death of her husband while driving a taxicab on a Maryland road outside of the District of Columbia, belonging to the Bell Cab Company. The deputy Commissioner determined that the relationship of employer and employee did not exist between the Bell Cab Company and the deceased. In his findings of fact it was stated that the deceased had rented cabs from the Bell Cab Company, Inc., under similar arrangements for the same rental periods on several prior occasions; that the contract for the use of the car ended at the expiration of the period of hire and was renewed day by day when the cab was rehired; that during a rental period the car was his to use; that if the driver was undesirable for any reason, the cab would not again be rented to him; that with respect to the use of the cab, the deceased elected his own method and manner of performing his work; that he determined where to operate the cab within the confines of the District of Columbia, when to begin and when to stop; that he worked according to his own ideas, as he pleased and when he pleased, without direction or supervision of the Bell Cab Company, Inc.; that he was privileged to stop at the taxicab stands and telephone call boxes which were provided for such drivers of the Bell Cab Company, Inc., Washington, D. C., as desired to avail themselves of the use of such means to procure passengers and fares; that the passengers who were in the cab at the time of the injury were procured by his own efforts; that he kept all the money he earned; that the stipulated amount paid for the use of the car was without regard to the amount of fares collected; that he paid for the gasoline which he consumed and which was usually provided by the Bell Cab Company, Inc., at a low rate. That the renting of the taxicab by the deceased from the Bell Cab Company, Inc., was a contract of bailment and not of services. The widow appealed to the District Court of the United States for the District of Columbia in Case Equity No. 65995. On February 25, 1938, Justice Bailey filed a decree in this case (without opinion) dismissing the bill of complaint. An appeal was noted to the United States Court of Appeals for the District of Columbia which, however, seems not to have been prosecuted.

Counsel have not been able to refer me to any other cases in the Washington courts involving very similar facts and adjudicating the question as to the legal relationship

of employer and employee between the cab company and the drivers. But it will be noted, in line with the law as determined by the House of Lords in the case referred to, that cab companies operating on somewhat but not entirely similar facts in the District of Columbia, have been held liable to members of the public injured by the negligent driving of the cabs. Rhone v. Try Me Cab Co., 62 App.D.C. 201, 65 F.2d 834; Callas v. Independent Taxi Owners' Ass'n, Inc., 62 App.D.C. 212, 66 F.2d 192; Champ v. Atkins, App.D.C., 128 F.2d 601, 602.

On similar but not identical facts the relation of employer and employee was held not established between a taxicab company and the drivers of its cabs, in Coviello v. Industrial Commission, 129 Ohio 589, 196 N.E. 661, although it was likewise pointed out in that case that the cab company would be liable to members of the public who were negligently injured by the cab driver. See also for a very full discussion of the legal principle involved, Meredith Publishing Co. v. Iowa Unemployment Commission, Iowa, 6 N.W.2d 6; Washington Recorded Publishing Co. v. Ernst, 199 Wash. 176, 91 P. 2d 718, 124 A.L.R. 667 (dealing with news distributors).

The practically uncontradicted evidence in this case is that the only legal relationship between the plaintiff and the drivers of its cabs was that of a lease or hiring of the cabs. About one-half of all cabs owned by the plaintiff were leased to the drivers under formal printed leases, several copies of which signed by both the Yellow Cab Company and the drivers, have been offered in evidence as plaintiff's exhibits Nos. 7 and 8. The substance of the lease is that a particularly described automobile is leased for a certain sum per week, or per day, by the cab company to the driver, who stipulated that he will pay the rental, that he operate the cab, maintain it at his expense in good working order and repair, and be responsible for loss or damage except that caused by collision or other casualty covered by insurance which the lessor agreed to carry; the lease to be terminated by the lessor upon default of the lessee in compliance with conditions and the lessee to be entitled to a bill of sale for the car upon completion of payment of stipulated rental for a stated number of weeks (about 80 to 90).

The evidence showed that such formal leases were customarily made with respect to new or nearly new cabs but that older cabs were generally hired to drivers from day to day only upon the payment of a stipulated rental. As further appears from the findings of fact in this case, the lessee or driver was free to use the cab or not use the cab as he pleased and to drive it when and where he wished and received and retained his whole earnings without accounting therefor at any time to the plaintiff. The driver was not subject to any control whatever by the plaintiff with respect to his driving of the cab, but was, of course, obliged to obey public laws and applicable regulations. The defendant's argument, in support of the contention that there was a relation of employer and employee, is based almost entirely on the plaintiff's public advertisements of its business, the uniform color in which its cabs were painted, and the maintenance of call boxes. This evidence no doubt subjected the plaintiff to legal liability for injuries negligently caused by the drivers to the public, but it is not inconsistent with the positive evidence in this case of the real relationship between the cab company and the drivers. The cab company's public advertisements, uniform color scheme and maintenance of call boxes were an effective means of making popular its cabs and thereby enabling it to lease or hire them to drivers on terms that it deemed satisfactory.

I find nothing in the evidence in this case that would warrant the conclusion that the particular relationship between the cab company and the drivers was a sham or pretense adopted as an ingenious device to avoid the payment of the statutory tax. On the contrary, it is stipulated in the case that this general method of operation by cab companies in Washington was adopted by many of the local companies in consequence of the effect of an Act of Congress in 1932, which practically abolished the use of meters in cabs, in consequence of which the cab companies had no adequate check upon the receipts by drivers of their cabs, and were thus forced to change their method of operation. And it will be noted that this change preceded the passage of the Social Security Act by several years.

Counsel for the defendant relies largely on Jones v. Goodson, 10 Cir., 121 F.2d 176, and Kaus v. Huston, D.C.Iowa, 35 F.Supp. 327, affirmed 8 Cir., 120 F.2d 183. Both cases dealt with the subject matter of the application of the tax to certain taxicab companies. The Jones case is clearly distinguishable from the present case as will clearly appear from the summary of the

facts on page 180 of 121 F.2d. The Kaus case took the form of a suit to enjoin the Collector of Internal Revenue from collecting the taxes. The finding of facts as made by the district judge (35 F.Supp. 327) seems to be similar in many respects to the facts in the instant case, but from the evidence the district judge drew the conclusion as an ultimate finding of fact that the arrangement between the taxicab owner and the drivers did not amount to a true leasing of the cabs but to an ingenious method of determining and fixing a fair remuneration of the drivers for their services. I am not able to draw a similar conclusion from the evidence in the instant case. It will be noted that on the appeal in the Kaus case Circuit Judge Sanborn said in his opinion, page 185 of 120 F.2d, "whether the appellant was, under the stipulation of facts and the evidence upon which the case was submitted, a lessor, a bailor or an operator of taxicabs, and whether the drivers were his employees or lessees or bailees of the cabs, we think it was, and is, not necessary to decide, since it is our opinion that the court lacked jurisdiction to enjoin the collection of these taxes because of § 3653, Tit. 26, U.S.C.A. Int.Rev.Code, and because the appellant has an adequate remedy at law."

The defendant's contention in this case seems to be an unwarrantable extension of the application of the Social Security Act. Neither the constitutionality nor the social desirability of the statute is now questioned. Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319; Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293. But what was said by Circuit Judge Healy for the 9th Circuit in Anglim v. Empire Star Mines Co., 129 F.2d 914, 917, in a case involving much similarity in principle to the present case, is here applicable. "There was in the practice here no element of calculated tax avoidance. The taxpayer's leasing program was inaugurated years before the Social Security Act was placed on the books. We entertain no doubt that these leasers should be classed as independent contractors. We are not unmindful of the beneficent purposes of the Act but the extension of its benefits to wider fields is not the business of the courts."

■■ Nor do I think it can be properly held in this case that any wages were paid by the taxpayer to the drivers of its cabs.

The only monetary consideration passing between the parties in consequence of the arrangement was the rental sum paid by the drivers for the hiring of the cabs. Literally, therefore, it is clear enough that with reference to the tax on the employer, wages were not "paid by him". The general rule with respect to the application of a taxing statute is that the taxpayer must be clearly brought within the full meaning of the words used in the statute. However, the defendant contends that the wording of the statute with respect to wages paid should not be taken too literally and cites some cases, involving different factual conditions in support of that view. Thus in this case it might very well be held that, if the plaintiff was entitled to an accounting from the drivers for the fares received by them from passengers, the mere fact that the monies were collected by the driver from the public and not from the plaintiff would not preclude a finding that the fares to be accounted for constituted wages. The brief of counsel for the defendant in this case does state as its position in this connection that the owner of the taxicab has a legal right to the amounts paid by the passengers in accordance with the specified rules and can require the driver to turn such amounts over to it. This, however, is a mistaken view of the evidence in this case which shows quite clearly that the taxicab owner has no such right to the fares collected by the driver or to any accounting therefor from him. The mere physical handling of the money is therefore not the material consideration in the case, which is rather that, by the real relationship of lessor and lessees or bailment of the cab for hire, the monies received by the drivers for fares and tips are collected by them for their own individual account, and for which they are not accountable in any way to the owner of the cabs.

Counsel for the defendant also seeks to analogize this matter of wages in this case to the Red Cap cases arising under the Fair Labor Standards Act. Williams v. Jacksonville Terminal Co., 315 U.S. 386, 62 S. Ct. 659, 86 L.Ed. 914; Southern Railway Co. v. Black, 4 Cir., 127 F.2d 280; but there is no true analogy here. The tips received by the Red Cap porters in the railway stations were received as a result of their employment by the railroads for a necessary transportation service. The real question was whether the Fair Labor Standards Act was applicable to the situation.

The courts held that it was because the relationship between the porters and the railroads was really that of employment. That point being settled, the next question was whether the tips received should be credited on the minimum wages required by the Act, and the courts held that they should be so credited. But in the instant case we find there was no employment relation and the monies received by the cab drivers belonged to them absolutely and they were in no way accountable therefor to the cab owner. In this case as there was no relation of employment between the parties, there is no basis for the view that the fares received by the drivers from the public constituted wages payable by the cab owner.

A different view would certainly entail very great difficulty in the administration of the Act. The amount of the tax is directly computed upon the amount of the wages. Where the alleged taxpayer has no right to demand an accounting from the alleged employee, it would seem impossible for him to compute and pay the tax. The facts in the instant case illustrate this very difficulty. It appears that the Commissioner in effect required the taxpayer to pay the tax on the more or less arbitrary assumption that the drivers' wages were at the rate of $3 per day; but there is no evidence to show that this was in fact the actual amount of the net earnings of the drivers which obviously must have varied greatly from day to day. The tax period involved in the particular case is only for three quarters of the year 1941 but the taxing act was in force several years prior thereto. The taxpayer made no returns for these prior years and apparently the Commissioner did not insist on returns for earlier years. While mere difficulty in the administration of the law is by no means conclusive, yet the uncertainties in the computation of the tax by reason of the particular conditions are at least some indication that it was not the intention of Congress to make the tax applicable in a situation of this kind.

For these reasons I have concluded that the plaintiff is entitled to recover the tax paid in this case, with interest, in accordance with the particularly applicable statute.

Counsel may submit the appropriate form of judgment in due course.