## ISRAELITE HOUSE OF DAVID v. UNITED STATES.

### Civ. A. No. 393.

District Court, W. D. Michigan, S. D.

Jan. 24, 1945.

Stephen T. Roumell, of Benton Harbor, Mich., for plaintiff.

Joseph F. Deeb, U. S. Atty., and Theodore H. Elferdink, Asst. U. S. Atty., both of Grand Rapids, Mich., and Maurice P. Wolk, Sp. Asst. to the Atty. Gen., for defendant.

RAYMOND, District Judge.

The findings of fact and conclusions of law filed herewith disclose the claims of the parties. The controlling issue is whether or not, for federal employment tax purposes, members of plaintiff were "employees". The record establishes that the legal relationship of "employer and employee" did not exist within the generally accepted meaning of those words.

Article 3 of Treasury Regulation 91, promulgated under Title VIII of the Social Security Act, 42 U.S.C.A. § 1001 et seq., provides that the relationship between the person for whom such services are performed and the individual who performs such services must, as to those services, be the legal relationship of employer and employee. Findings of fact 10, 11, and 12 differentiate clearly the legal relationship ordinarily existing between employer and employee, and the relationship here disclosed.

In the case of Yellow Cab Co. v. Magruder, D.C., 49 F.Supp. 605, 607, Judge Chesnut said: "The conventional relation of employer and employee is also that known in the law as master and servant, the latter as distinguished from an independent contractor. And as appears from the regulation above referred to, there are certain legal tests to distinguish the two relationships. Probably the most important of these tests is whether the alleged master in any case has the right, even if he does not exercise it, to control and direct the alleged servant, not only as to what shall be done but how it shall be done. Each case depends upon its own facts and circumstances, and in doubtful cases it is necessary to examine the particular facts to answer the question."

Judge Chesnut also said at page 611: "* * * The amount of the tax is directly computed upon the amount of the wages. Where the alleged taxpayer has no right to demand an accounting from the alleged employee, it would seem impossible for him to compute and pay the tax. The facts in the instant case illustrate this very difficulty. It appears that the Commissioner in effect required the taxpayer to pay the tax on the more or less arbitrary assumption that the drivers' wages were at the rate of $3 per day; but there is no evidence to show that this was in fact the actual amount of the net earnings of the drivers which obviously must have varied greatly from day to day." See, also, Ma-

gruder v. Yellow Cab Co. of D. C., 4 Cir., 141 F.2d 324, 153 A.L.R. 516.

In the present case, the assessment was made upon the more or less arbitrary assumption that the value of food, clothing, medical attention and housing of each working member (regardless of nature of work, time spent, responsibility involved, age, or experience) was $40 per month, but there is no evidence to show that this was the fact.

■ In the case of United States v. Griswold, 1 Cir., 124 F.2d 599, 601, it is said: " * * * We held that 'an employee is one who meets the tests of the more or less established concept of "the legal relationship of employer and employee", Texas Co. v. Higgins, 2 Cir., 1941, 118 F.2d 636, 637, and that one who does not meet those tests is not an employee within the meaning of the act even though he may bear the title of corporate officer.'"

The conclusion of the court is that the legal relationship of employer and employee, in the ordinary sense, is not shown to exist in the instant case.

Judgment for plaintiff will be entered accordingly.

### Findings of Fact.

1. This action arises under the laws of the United States providing for internal revenue, and the court has jurisdiction of the subject matter and of the parties.

2. Plaintiff is a voluntary religious or apostolic association, having its principal office and place of business at Benton Harbor, Michigan. It was organized as a corporation, but in 1907 a decree ordering its dissolution was entered in the Ingham County Circuit Court.

3. On October 15, 1941, the plaintiff paid to the Collector of Internal Revenue tax, penalty, and interest in the aggregate amount of $1,905.06, assessed under Title VIII of the Social Security Act and under the Federal Insurance Contributions Act, 26 U.S.C.A. Int.Rev.Code, § 1400 et seq., for the periods January 1, 1937, to March 31, 1939, inclusive, and January 1, 1941, to March 31, 1941, inclusive. It filed timely claims for refund of these taxes which were rejected by the Commissioner of Internal Revenue on January 14, 1942.

4. On January 2, 1942, plaintiff paid to the Collector of Internal Revenue tax, penalty and interest in the aggregate amount of $264.46 assessed under Title IX of the Social Security Act, 42 U.S.C.A, § 1101 et seq., for the calendar year 1938. It filed a timely claim for refund of these taxes which was rejected by the Commissioner of Internal Revenue on September 8, 1943.

5. The plaintiff has a common treasury and is specifically exempt from income taxation under section 101(18) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 101(18). Prior to this amendment of the Revenue Code, the association was treated as a corporation and paid income taxes accordingly. This exemption in favor of the association is conditioned on the express provision that each member's entire pro rata share of the net income of the association, whether distributed or not, be included in the member's report of gross income in his personal income tax return, and further, that the same is to be treated by him as a dividend received.

6. During the tax periods in litigation, plaintiff had business interests, including an automobile sales agency, a tourist camp, two cold storage plants, a restaurant, a bar, a bowling alley, tourist cabins, an amusement park, filling stations, a green house, and a power plant. The association hires many non-member employees who are supervised in the various enterprises of the association by member or non-member managers. These non-member employees are subject to all of the usual employer-employee requirements such as payment of fixed wages and the keeping of regular hours; keeping of proper records by the association of their hours of work; and the usual insurance provisions are made in their behalf, such as unemployment and compensation insurance. On these employees the association pays taxes under Titles VIII and IX of the Social Security Act.

7. Many, but not all, of plaintiff's members are engaged in and about the operation of the aforesaid enterprises, and the members so engaged receive no pay for these services. They do receive, in common with all other members, housing, clothing, food, and medical attention, but the receipt and extent of these benefits is not dependent upon or measured by the amount of time devoted to the enterprise, the kind or quality of the work performed by each, or the amount of skill necessary to the performance of the work. Such benefits are dependent solely upon membership in the association. The benefits are enjoyed not only by those who actually work, but by

the aged and the sick. All members receive the same benefits, regardless of whether they work or do not work.

8. Each incoming member is required to transfer to the association all his worldly goods. There is no right in any one, under the by-laws or as a matter of practice, to expel or discharge a member for failure to work, or for failure to do a particular thing in a specified way. There are no rules or regulations as to hours of work or conditions of work. The members carry on their tasks individually and, aside from the practice of members consulting with the officers in finding the task each is best qualified to do, each has the right to choose his occupation.

9. All of the property and all of the profit of the various business enterprises are kept as a common fund for the use and benefit of all members. Each member is entitled to draw upon this common fund so long as the association has the money for food, shelter and clothing. Gains and losses of the association (though kept in a common fund) are shared equally by the members, because gains and losses are considered in arriving at the net income which is pro-rated among the members equally, as a dividend received, and upon which each member computes his or her personal income tax.

10. No wages, in fact, are paid by the association to the members, and no records or time sheets of the work of the members are kept.

11. The food, clothing, shelter and medical attention are not furnished members in lieu of services performed but solely because of their membership in the association. There is no relationship between the reasonable value of the services rendered by each member and the reasonable market value of the food, clothing, shelter and medical attention received by each.

12. Article VI of the Principles of Faith provides that all labor and services performed by any member shall be an absolute gift; and that no member shall make any claim for his or her services, and that no member shall have or claim to have any demand against the association for any services of any kind or description.

## Conclusions of Law.

1. The food, clothing, shelter and medical attention furnished the members rendering services for plaintiff do not constitute wages for federal employment tax purposes.

2. The taxes assessed and collected herein were not due and owing by plaintiff.

3. Plaintiff is entitled to recover from defendant the sum of $2,169.52, with interest as provided by law.

4. Judgment will be entered accordingly.