663 P.2d 600

**UNITED FARM WORKERS OF AMERICA, AFL–CIO, Plaintiffs-Appellants,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, and John L. Huerta, Defendants-Appellees.**

**No. 1 CA–CIV 5799.**

Court of Appeals of Arizona, Division 1, Department A.

March 24, 1983.

Cordova, Flores, Morales & Iniguez, P.C. by Arnold Cordova, Jr., Phoenix, and Marco E. Lopez, Carlos M. Alcala, Carmen S. Flores, Federico G. Chavez, Ellen J. Eggers by Marco E. Lopez, Carlos M. Alcala, Keene, Cal., for plaintiffs-appellants.

Robert K. Corbin, Atty. Gen. by C. Eileen Bond, Asst. Atty. Gen., Phoenix, for defendants-appellees.

KLEINSCHMIDT, Judge.

This is an appeal from a judgment of the superior court affirming a tax liability determination of the Arizona Department of Economic Security to the effect that certain persons who perform services for the appellant, United Farm Workers, were employees of the United Farm Workers who were paid "wages" and that the union must therefore pay unemployment compensation contributions based on such wages. We affirm the decision of the trial court.

. The relevant facts are undisputed. We set them forth verbatim as they were found by the trial court:

1. All persons working with and in support of the United Farm Workers of America, are both considered and called volunteers by themselves and the Union. The subsistence allowance provided to full-time volunteers is not considered by the Union or the volunteers as a salary or a bargained consideration for services performed but is intended only to enable them to sustain themselves while providing services for the benefit of farmworkers.

2. Many of these volunteers are persons from farmworker backgrounds and have associated themselves with the Union to alleviate the poor working and living conditions that they personally experienced in the fields and which members of their families still endure.

3. The volunteers are called on to work long hours, often up to sixteen hours per day and frequently seven days per week. If a person volunteers on a full-time basis (i.e., being available and willing to assist in Union activities on a seven day per week, twenty-four hours per day basis) he or she is provided benefits to maintain themselves upon a minimal subsistence basis.

4. If a person volunteers for anything less than full-time basis, he or she receives no subsistence benefits at all from the Union.

5. Volunteers receive only enough to cover expenses for essential necessities, i.e., food, utilities, rent, and sometimes gasoline if the volunteer has a car—each with applicable ceiling amounts, e.g., five dollars per week for food.

6. Single volunteers almost always live either in community housing provided by the Union or locate other cost-free housing with family or friends. If a married volunteer does not have housing, the Union will rent a facility for his or her

family and then pay the rent and utilities directly. Family members are given an additional five dollars per week for food.

7. Any actual money full-time volunteers receive is on an expense-receipt basis, e.g., for gasoline. Reimbursements are made only upon presentation of receipts. The only exception to this is five dollars per week (increased to ten dollars per week July 1, 1977, for miscellaneous expenses).

8. Persons who volunteer with the Union consider themselves volunteers and not employees and receive the above payments to enable them to lend their services to the Union and do so to better working conditions in the fields and bring justice to farmworkers.

9. The allowances and benefits provided are in no way related to the services rendered or the level of responsibility of the volunteer but are given to each volunteer on an equal basis with the only adjustments based upon need, e.g., family size.

The statutory scheme dealing with unemployment compensation provides for an unemployment compensation fund. A.R.S. § 23–701. An employer's contribution is based upon a percentage of wages paid during the calendar year. A.R.S. § 23–728. Persons who become unemployed and who are otherwise eligible are paid unemployment benefits from the unemployment compensation fund. A.R.S. § 23–782.

The key provisions we must construe are A.R.S. § 23–615 and A.R.S. § 23–622. A.R.S. § 23–615, in its relevant part, provides as follows:

A. 'Employment' means any service of whatever nature performed by an employee for the person employing him, . . . .

A.R.S. § 23–622 reads, in its relevant part, as follows:

A. 'Wages' means all remuneration for services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. The reasonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with regulations prescribed by the department.

There is another statutory provision that has a bearing on this question. A.R.S. § 23–613.01 was adopted after the department of economic security made its determination of tax liability but before the superior court entered judgment affirming that determination.[1] It reads, in relevant part, as follows:

A. 'Employee' means any individual who performs services for an employing unit and who is subject to the direction, rule or control of the employing unit as to both the method of performing or executing the services and the result to be effected or accomplished, . . . .

The statutes defining "employment," "employee," and "wages" could hardly be more broadly drawn. There are no Arizona decisions directly on point but several cases from other jurisdictions shed light on the question. Of these, the one most closely on point is *Employment Sec. Div. v. Shiloh Trust*, 249 Ark. 429, 460 S.W.2d 66 (1970). That was a proceeding to determine the taxability of the Shiloh Trust under the Arkansas Employment Security Law. The Shiloh Trust was a small, self-sufficient, nonprofit organization that had some interdenominational religious aspects. Members of the trust lived on land owned by it and met, dined, and in many instances worked together. The primary effort of the members was directed to raising and selling "natural" foods but some members also operated a service station that sold to the public. All members of the trust received room and board free and were paid an allowance that varied in amount depending upon their age. The amount was paid whether the members worked or not al-

1. Arguably, A.R.S. § 23–613.01 has no bearing on the question of whether contributions are owed for the period preceding its adoption. It is not crucial to our decision because we believe, for the reasons stated hereinafter, that contributions are owed on the basis of our interpretation of the other statutory provisions.

though in practice it appeared that almost all members did work. The amounts paid varied from a low of $3.00 per month to $28.60 per month.

The Arkansas statutes in question defined "employment" as "[A]ny service performed for an employing unit." "Wages" were defined as "[A]ll remuneration payable for personal services including the cash value of remuneration paid in any medium other than cash." The Supreme Court of Arkansas concluded that the members of the trust were "employees" who were paid "wages."

The same principle applies here. Appellant stresses heavily that the subsistence paid here is nominal and not related to skill or effort. The Arizona statutes, however, make no distinction based on the amount of remuneration or the fact that it is undifferentiated on the basis of skill. We, therefore, do not see why these considerations should control.

The appellants' argument is primarily predicated on two cases. The first of these is *Camphill Village, U.S.A., Inc. v. Workmen's Comp. Bd.*, 23 N.Y.2d 202, 296 N.Y. S.2d 129, 243 N.E.2d 739 (1968), which dealt with the question of whether the appellant was a covered employer under the New York Workmen's Compensation Law. The appellant, Camphill, was a nonprofit corporation organized to rehabilitate mentally handicapped persons. Certain persons who worked for it received no stipulated compensation but instead were remunerated by full subsistence for their households during the time that they were performing services for Camphill. The Court of Appeals of New York concluded that they were volunteers as opposed to employees and that no contributions need be made for the subsistence paid to them. *Camphill* is readily distinguishable because the New York law in question specifically exempted from coverage the nonprofit-making activities of charitable institutions and specifically exempted volunteers in or for such institutions. The court discussed the meaning of the statute in the following terms:

The evident purpose of the statute is to except, as volunteers, charitable workers who dedicate themselves to humane work without expectation of economic gain or benefits in the ordinary or commonly accepted sense. Indeed, if charity workers receiving some subsistence are not included in the exception of 'volunteers' it is difficult to think of any who are covered by the exception, since charity workers who receive no subsistence nor any moneys at all create no problem requiring the statutory exception.

23 N.Y.2d at 208, 296 N.Y.S.2d 129, 243 N.E.2d 739.

Since the Arizona statute contains no exemptions for volunteers *Camphill* is inapposite.

The other case on which appellants rely is *Israelite House of David v. United States*, 58 F.Supp. 862 (D.C.Mich.1945). The question presented in that case was whether or not, for federal employment tax purposes, members of the Israelite House of David were "employees." The evidence showed that the Israelite House of David was a voluntary religious association having a common treasury. Many of its members were engaged in operating various commercial enterprises. Such members received no pay for their services but did receive, in common with all other members including those who did not work, housing, clothing, food, and medical attention. The receipt and extent of those benefits was not dependent upon nor measured by the amount of time devoted to the enterprise, the kind or quality of the work performed by each, or the amount of skill necessary to the performance of the work. Benefits were dependent solely upon membership in the association.

The district court concluded that the Israelite House of David was not liable for the federal employment tax. In so doing it was called upon to construe a treasury regulation which provided that the relationship between the person for whom such services are performed and the individual who performed such services must have "the legal relationship of employer and employee."

The court concluded that the subsistence furnished was provided solely because of membership in the association, not by reason of the services performed.

*Israelite House of David* is distinguishable because it did not construe statutes like the Arizona provisions which couched "employment," "employee," and "wages" in the broadest possible terms. Instead, it dealt with the common law concept of the legal relationship of "employer and employee." It is further distinguishable because the persons who work for the United Farm Workers, unlike members of the Israelite House of David, must be available to work on a full-time basis before they are eligible for subsistence.

The judgment of the trial court is affirmed.

CORCORAN, P.J., and CONTRERAS, J., concur.